Lynda J. KHAN, Plaintiff–Appellant,
Cross–Appellee,

v.

Dennis J. GALLITANO, Nancy J. Czarnik, Craig B. Johnson, et al., Defendants–Appellees, Cross–Appellants.

Nos. 98–2281, 98–3392.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 18, 1999.

Decided June 11, 1999.

Lynda J. Khan (argued), Chicago, IL, for Plaintiff–Appellant, Cross–Appellee.

William W. Kurnik (argued), Kurnik, Cipolla & Barasha, Arlington Heights, IL, for Defendants–Appellees, Cross–Appellants Gallitano, Czarnik, Johnson.

Michael A. Haugh, Veverka, Rosen & Haugh, Chicago, IL, for Defendant–Appellee, Cross–Appellant Serfecz–Edlund.

Kevin W. Horan, Rock, Fusco, Reynolds, Crowe & Garvey, Chicago, IL, for Defendant–Appellee Hurley in No. 98–2281.

Jeffrey D. Corso, Rock, Fusco, Reynolds, Crowe & Garvey, Chicago, IL, for Defendant–Appellant Hurley in No. 98–3392.

Before BAUER, MANION, and ROVNER, Circuit Judges.

MANION, Circuit Judge.

Plaintiff Lynda Khan, an attorney representing herself *pro se*, sued six former or current officials of Elk Grove Village, Illinois, and two private attorneys, alleging that the defendants had wrongfully interfered with a contract between Khan and a client. Khan asserted two claims: an Illinois tort law claim for interference with contract and a federal claim under 42 U.S.C. § 1983. For her federal claim, Khan alleged that the defendants violated her rights under the Contracts Clause and the Due Process Clause of the Fourteenth Amendment. The district court dismissed the federal claim under Fed.R.Civ.P. 12(b)(6), and then declined to exercise supplemental jurisdiction over the state law claim. Khan now appeals the dismissal of her § 1983 claim, and the defendants cross-appeal the district court's refusing to award them attorney's fees as the prevailing party under 42 U.S.C. § 1988. We affirm.

## I. Background

We take Khan's well-pleaded facts as true, and we take some of the background facts from our prior decision in a related case, *Serfecz v. Jewel Food Stores,* 67 F.3d 591 (7th Cir.1995). In 1977, Joseph Serfecz purchased Grove Mall in Elk Grove Village. Serfecz's anchor tenant was Jewel Food Stores, Inc., which had leased space to operate a grocery store in the mall since 1963. Jewel's lease expired in 1986, and Jewel renewed it for five years, which the lease permitted it to do up to three times. But in 1987 Jewel moved its store into the newer Elk Crossing Mall, which was across the street from Grove Mall. Jewel continued to pay rent under its lease with Serfecz's Grove Mall, and, allegedly as a means of keeping out any competing grocery stores, had no intention of terminating the lease. Indeed, after its initial five-year renewal expired, Jewel renewed for another five years, although it was paying for empty space. Later Jewel

wanted to sublease its space in Grove Mall to a roller rink, but Serfecz refused to allow it. Jewel then sued Serfecz in the Illinois state courts, seeking a declaration that Jewel could sub-lease its space to the roller rink. As will be seen, this was the first of numerous lawsuits involving Serfecz. He hired Khan to defend this suit, and she won a judgment that the proposed sublease was not permitted. The judgment was affirmed on appeal.

Serfecz then retained Khan to sue Jewel, and they made a contingency fee contract that promised Khan one-third of Serfecz's recovery. In June 1992, Khan filed a complaint for Serfecz in federal district court against Jewel and numerous others asserting violations of the Sherman Act, breach of the lease agreement, and malicious prosecution. The district court ultimately granted summary judgment to the defendants on Serfecz's antitrust claims and his malicious prosecution claim, but permitted the case to proceed on one part of the breach of lease claim. The district court entered a final judgment under Fed. R.Civ.P. 54(b) on the claims for which it had granted summary judgment, and this court affirmed. *Serfecz*, 67 F.3d at 603. (Apparently the remaining part of this suit is still pending.)

In 1994, before the grant of partial summary judgment against Serfecz, defendant Gallitano became president of the Elk Grove Board of Trustees. He publicly announced that he would have Grove Mall condemned if Serfecz did not drop his suit against Jewel. Serfecz requested a zoning change so that he could redevelop Grove Mall. Elk Grove denied the request, but Gallitano stated publicly that if Serfecz dismissed his antitrust suit against Jewel, the request would be approved. Khan alleges numerous other instances in which Gallitano and others in the Elk Grove government pressured Serfecz to abandon his legal rights. Serfecz even filed a federal civil rights suit against Gallitano and others, but he dismissed it in the Fall of 1994 when Elk Grove officials assured him that they would cooperate with his redeveloping Grove Mall. That redevelopment never happened.

We now come to the two lawsuits that principally concern us here: Elk Grove's condemnation proceeding and Serfecz's second federal civil rights suit. In January 1995 Elk Grove filed a proceeding to condemn Grove Mall. Serfecz hired defendant Hurley, a private attorney, to represent him. Eventually defendant Serfecz–Edlund, another private attorney who we are told is Serfecz's niece, also joined Hurley in defending this action. Khan was not involved in this proceeding. For several months, the parties apparently tried to negotiate a settlement to this proceeding but were unsuccessful. While Hurley and Serfecz–Edlund continued to represent Serfecz in the condemnation proceeding, in August 1995 Serfecz again retained Khan to bring another federal civil rights suit. Serfecz and Khan made a second contingency fee agreement. Again, Khan would get one-third of Serfecz's recovery. Serfecz agreed not to dismiss the suit without consulting Khan and agreed that she would have to be a part of any settlement negotiations. On September 8, 1995, Khan filed a complaint for Serfecz in the Northern District of Illinois against Gallitano and numerous others alleging various federal civil rights violations.

In April 1996 Hurley and Serfecz–Edlund finally negotiated a settlement of the condemnation proceeding with Elk Grove. Serfecz would receive nearly $7 million as compensation for the mall, and he would dismiss the civil rights action that Khan had filed on his behalf. No one apprised Khan of the negotiations and she was not involved in them. Counsel for the defendants in the civil rights case—without Khan's knowledge—told the district court that they had settled that case and gave the court a copy of a settlement agreement signed by Serfecz. So the court dismissed the suit with leave to refile within 30 days.

On February 3, 1998, Khan filed this suit. She alleged that Serfecz agreed to

dismiss the civil rights action only because the defendants had wrongfully coerced him. Khan asserted a federal claim under § 1983 and a state tort claim. The district court dismissed the federal claim under Fed.R.Civ.P. 12(b)(6) and declined to take supplemental jurisdiction over the state claim. The defendants sought attorney's fees as the prevailing parties under 42 U.S.C. § 1988, but the district court awarded no fees because it concluded that Khan had in good faith argued to extend existing law. Khan appealed the dismissal and the defendants cross-appealed the denial of fees.

## II. Analysis

### A. Khan's § 1983 Claim

Because the district court dismissed Khan's federal claim under Fed.R.Civ.P. 12(b)(6), we must decide a legal question: Assuming the facts alleged in the complaint are true, and giving Khan the benefit of all reasonable inferences to be drawn from those facts, has she stated a cognizable cause of action under 42 U.S.C. § 1983? *See Kaplan v. Shure Brothers, Inc.*, 153 F.3d 413, 417–18 (7th Cir.1998). Section 1983 provides that "[e]very person who, under color of statute, ordinance, regulation, custom, or usage, of any State ... subjects, or causes to be subjected, any citizen of the United States ... to the deprivation of any rights secured by the Constitution and laws, shall be liable to the party injured in an action at law...." Khan alleges that the defendants violated two separate provisions of the federal constitution: the Contracts Clause and the Due Process Clause of the Fourteenth Amendment. We address each one in turn.[1]

### 1. Contracts Clause

 Section 10 of Article I sets out a series of limits on the powers of the States, including the limit that "[n]o State shall ... pass any ... law impairing the Obligation of Contracts." A State violates the Contracts Clause if a "change in state law has 'operated as a substantial impairment of a contractual relationship.'" *General Motors Corp. v. Romein*, 503 U.S. 181, 186, 112 S.Ct. 1105, 117 L.Ed.2d 328 (1992) (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244, 98 S.Ct. 2716, 57 L.Ed.2d 727 (1978)). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Id.* Here the first component is met because Khan and Serfecz had a contract, but the second component is not met. The defendants' allegedly wrongful acts that induced Serfecz to terminate his contract with Khan were not a "change in law," even though the defendants were state actors. It has long been settled that the language of the Contracts Clause—*pass any law*—prohibits only legislative changes that impair contracts. *See Tidal Oil Co. v. Flanagan*, 263 U.S. 444, 451 & n. 1, 44 S.Ct. 197, 68 L.Ed. 382 (1924) (collecting cases); *Barrows v. Jackson*, 346 U.S. 249, 260, 73 S.Ct. 1031, 97 L.Ed. 1586 (1953) (citing *Tidal Oil*); *Nowicki v. Ullsvik*, 69 F.3d 1320, 1325 (7th Cir.1995) (citing *Barrows*). Khan argues that there was a legislative change here because the Elk Grove board approved the settlement of the condemnation proceeding. We reject that argument. Khan has alleged that the defendants acted tortiously, possibly unconstitutionally, and Elk Grove approved the result of their wrongful acts. But she has not alleged that a legislature "pass[ed]" an unconstitutional law.

### 2. Substantive Due Process

Khan also alleges that the defendants violated her rights under the Due Process

---

1. The defendants have not challenged, so we need not determine, whether Khan alleged sufficient facts to show that Hurley and Serfecz–Edlund, both private persons, could be liable under § 1983. *See Fries v. Helsper*, 146 F.3d 452, 457 (7th Cir.1998) (private person liable under § 1983 only if he conspired with state actor to violate plaintiff's federal rights).

Clause of the Fourteenth Amendment. Section One of the Fourteenth Amendment provides: "nor shall any State deprive any person of life, liberty, or property, without due process of law." Khan does not complain that the process used by the defendants was inadequate; rather she relies on the concept of "substantive due process" as a bar to the alleged deprivation, no matter what process was used. The courts have long struggled to identify the appropriate analysis for substantive-due-process claims. In a series of cases, a majority of Justices on the Supreme Court could not agree on a single analysis to use in substantive-due-process cases. *See, e.g., Planned Parenthood of Southeastern Pennsylvania v. Casey,* 505 U.S. 833, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (5 opinions); *Albright v. Oliver,* 510 U.S. 266, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (5 opinions). But in *Washington v. Glucksberg,* 521 U.S. 702, 117 S.Ct. 2258, 138 L.Ed.2d 772 (1997), a five-Justice majority of the Court agreed on a single analysis.

"The Due Process Clause guarantees more than fair process, and the 'liberty' it protects includes more than the absence of physical restraint. The Clause also provides heightened protection against government interference with certain fundamental rights and liberty interests." *Glucksberg,* 521 U.S. at 719, 117 S.Ct. at 2267 (citations omitted). But the Court expressed its reluctance to find new substantive-due-process rights:

> [W]e have always been reluctant to expand the concept of substantive due process because guideposts for responsible decision making in this uncharted area are scarce and open-ended. By extending constitutional protection to an asserted right or liberty interest, we, to a great extent, place the matter outside the arena of public debate and legislative action. We must therefore exercise the utmost care whenever we are asked to break new ground in this field, lest the liberty protected by the Due Process Clause be subtly transformed into the

policy preferences of the members of this Court.

521 U.S. at 720, 117 S.Ct. at 2267–68 (citations, internal quotations, and alterations omitted); *see also National Paint & Coatings Assoc. v. City of Chicago,* 45 F.3d 1124, 1129 (7th Cir.1995) ("[W]e have spent some time looking through the Constitution for the Substantive Due Process Clause without finding it.... The fact that [substantive due process] is a doctrine owing its existence to constitutional structure rather than a clear grant of power to the judiciary has led the Supreme Court to be cautious in its use."). Synthesizing its prior precedent, the Court set out the two "features" of the substantive-due-process analysis:

> First, ... the Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition, and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed. Second, we have required in substantive-due-process cases a careful description of the asserted fundamental liberty interest. Our Nation's history, legal traditions, and practices thus provide the crucial guideposts for responsible decision making that direct and restrain our exposition of the Due Process Clause.

*Id.* at 720–21, 117 S.Ct. at 2268 (citations and internal quotations omitted).

We must therefore "carefully formulat[e] the interest" that Khan wants constitutionally protected. 521 U.S. at 722, 117 S.Ct. at 2269. In *Glucksberg,* the Court of Appeals had stated the interest in general terms, and the Supreme Court rejected this approach. *Id.* Rather than asking, as the Ninth Circuit *en banc* had, whether there was "a right to die," the Court asked whether "the 'liberty' specially protected by the Due Process Clause includes a right to commit suicide which itself includes a right to assistance in doing so." *Id.* Khan states the interest at issue as the "right to

contract" and the right to perform a specific contract. But as in *Glucksberg* such an abstract statement of the right at issue is far too general to guide our analysis of the specific conduct about which Khan complains. She does not allege that the defendants deprived her of a general right to enter into contracts. And while the defendants state the issue narrowly, they misstate it, claiming that we must decide whether Khan has "a right to pursue a cause of action against the wishes of her client even after her terminable at will relationship with [the client] had ended." Appellees' Brief at p. 10. Khan does not seek, as the defendants suggest, to step into Serfecz's shoes and become the plaintiff in the civil rights suit that he dismissed, or act as a third-party plaintiff asserting Serfecz's civil rights. *Cf. United States Dept. of Labor v. Triplett*, 494 U.S. 715, 720, 110 S.Ct. 1428, 108 L.Ed.2d 701 (1990) (permitting attorney to assert constitutional rights of his clients). At bottom, Khan alleges that but for the tortious acts of the defendants (strangers to her contract), Serfecz (her contract partner) would not have terminated their relationship and so Khan would have gotten some greater benefit from this relationship. So the precise liberty at issue is the right to be free from state officials tortiously interfering with one's existing contractual relationships.

With this carefully formulated interest identified, we must "examin[e] our Nation's history, legal traditions, and practices," *Glucksberg*, 521 U.S. at 710, 117 S.Ct. at 2262, to see what place this interest has. Khan must show not merely that the defendants injured her in some legal sense but that they deprived her of a liberty deeply rooted in our history and tradition. Khan's burden is great because, as we noted, courts are generally reluctant to recognize new substantive-due-process rights, *Glucksberg*, 521 U.S. at 719–22, 117 S.Ct. at 2267–68, and are particularly reluctant when such rights are, as in this case, nothing more than a state-law tort made into a constitutional tort, *see, e.g.,*

*DeShaney v. Winnebago County Dept. of Social Servs.*, 489 U.S. 189, 202, 109 S.Ct. 998, 103 L.Ed.2d 249 (1989) ("[T]he Due Process Clause of the Fourteenth Amendment ... does not transform every tort committed by a state actor into a constitutional violation."); *Daniels v. Williams*, 474 U.S. 327, 332, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of conduct to regulate liability for injuries that attend living together in society.").

■ Under Anglo–American contract law, a contracting party's traditional right is to receive the value of the benefit of her bargain. *See, e.g., Sager v. Friedman*, 270 N.Y. 472, 1 N.E.2d 971, 974 (1936) ("The measure of damages which flows from a breach of contract is the difference between the value of what has been received under the contract and the value of what would have been received if the contract had been performed according to its terms."); *Horwitz–Matthews, Inc. v. City of Chicago*, 78 F.3d 1248, 1251 (7th Cir. 1996) ("In Holmes's vivid formulation, the obligation created by a contract is an obligation to perform or pay damages for non-performance.") (citing Oliver Wendell Holmes, "The Path of the Law," 10 Harv.L.Rev. 457, 462 (1897)). Khan does not allege that the state absolved Serfecz of his obligation under the contract with Khan—doing so would create Contracts Clause problems—so she has available the traditional remedy of contract law: a suit for damages against Serfecz for breach in which she could recover the value of her bargain. (The defendants told us that she is in fact concurrently pursuing a state claim for breach of contract against Serfecz.)

■ Khan here seeks a non-contractual remedy. She wants to recover from the defendants the value she would have gotten from her contract with Serfecz had

they not interfered with it and Serfecz thus performed differently. Certainly in some states, including Illinois, one who wrongfully interferes with the contract rights of another is liable for damages in tort, and in dismissing Khan's § 1983 claim the district court did not imply that Khan cannot try to vindicate her rights under Illinois's tort law in the Illinois courts. But this does not mean that the defendants also committed a constitutional tort. Neither party provided an analysis of this tort's place in our history and legal traditions. We have not even been told, for example, how many states recognize this tort. But even if we concluded that the tort remedy for a wrongful interference with contract was deeply rooted in our legal history and tradition—something we are in no position to find on this record—Khan has not alleged she was deprived of that remedy. That is, as we have said, Khan does not allege that she does not have a remedy in tort for whatever damages the defendants' wrongful interference caused her. Rather, Khan asserts that she has a federal right to be free from such interference in the first place.

■ But Khan has failed to show why the right to be free from tortious interference by state actors is a fundamental right deeply rooted in our history and tradition or implicit in the concept of ordered liberty. Khan has not shown why having a state-law remedy for whatever injury the defendants caused her is inadequate under the federal constitution. Khan's burden was great and she did not meet it. So we will not create a redundant federal right that simply mirrors the available state-law tort. We reached a similar conclusion in *Horwitz–Matthews*, where the plaintiffs brought a Contracts Clause claim because a city repudiated its contract with them. We rejected that claim because the city had done nothing to prevent the plaintiffs from seeking damages under state con-tract law for the alleged breach. *See* 78 F.3d at 1250 ("It would be absurd to turn every breach of contract by a state or municipality into a violation of the federal Constitution."). Under the Supreme Court's *Glucksberg* fundamental-rights analysis, Khan's substantive-due-process claim fails.

The defendants do not rely exclusively on the *Glucksberg* analysis; in fact they principally assert that the appropriate analysis is whether they acted arbitrarily or irrationally. Numerous cases have used similar formulations. *See Contreras v. City of Chicago*, 119 F.3d 1286, 1295 (7th Cir.1997) (analyzing substantive-due-process claim involving property rights).[2] Although the defendants cite *Glucksberg* to support this analysis, the Court in *Glucksberg* contrasted its analysis, which we have quoted above, with the analysis in Justice Souter's concurring opinion. The Court stated:

Justice SOUTER, relying on Justice Harlan's dissenting opinion in *Poe v. Ullman*, would largely abandon this restrained methodology, and instead ask "whether [Washington's] statute sets up one of those 'arbitrary impositions' or 'purposeless restraints' at odds with the Due Process Clause of the Fourteenth Amendment." In our view, however, the development of this Court's substantive-due-process jurisprudence ... has been a process whereby the outlines of the "liberty" specially protected by the Fourteenth Amendment—never fully clarified, to be sure, and perhaps not capable of being fully clarified—have at least been carefully refined by concrete examples involving fundamental rights found to be deeply rooted in our legal system. This approach tends to rein in the subjective elements that are necessarily present in due-process judicial review.

2. *Contreras* was decided just after *Glucksberg* and did not rely on that decision in its analy-sis.

521 U.S. at 720–22, 117 S.Ct. at 2268. While *Glucksberg* seems to be the prevailing view, just one term after deciding *Glucksberg*, the Court decided *County of Sacramento v. Lewis*, 523 U.S. 833, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998). In that case, the family of a boy who died during a high-speed police chase claimed that the police officer's conduct violated the boy's substantive-due-process rights. Justice Souter wrote the Court's opinion, which examined whether the officer's conduct was so "arbitrary" that it " 'shocks the conscience' and violates the 'decencies of civilized conduct.' " 523 U.S. at ——, 118 S.Ct. at 1717. The Court rejected the plaintiffs' claim because there had been no showing that the officer intended to harm the boy and so the officer's conduct during the high-speed chase did not shock the Court's conscience. *Id.* at ——, 118 S.Ct. at 1720.

Although the Court in *Lewis* used a substantially different analysis than it had in *Glucksberg*, this does not mean that the *Glucksberg* analysis does not apply here. The circumstances in *Lewis*, a high-speed chase where government officials had to make split-second decisions, has no resemblance to the situation in this case. And the Court made clear that its shocks-the-conscience analysis was not generally applicable to all substantive-due-process claims. 523 U.S. at ——, 118 S.Ct. at 1719 (distinguishing high-speed chases from "normal pre-trial custody" where a different substantive-due-process standard applies); *also id.* at ——, 118 S.Ct. at 1718 ("Rules of due process are not, however, subject to mechanical application in unfamiliar territory. Deliberate indifference that shocks in one environment may not be so patently egregious in another, and our concern with preserving the constitutional proportions of substantive due process demands an exact analysis of circumstances before any abuse of power is condemned as conscience-shocking."). We conclude, therefore, that the *Glucksberg* fundamental rights analysis generally applies in substantive-due-process cases, but for particular circumstances such as the high-speed chase in *Lewis* or pre-trial detention, the specialized analysis adopted for those circumstances would apply. *Cf., e.g., Collignon v. Milwaukee County*, 163 F.3d 982, 987–88 (7th Cir.1998) (applying "professional judgment standard" for substantive-due-process claim by pre-trial detainee alleging inadequate medical treatment) (citing *Youngberg v. Romeo*, 457 U.S. 307, 322–23, 102 S.Ct. 2452, 73 L.Ed.2d 28 (1982)).

■ In any event, we would reach the same conclusion whether we ask if the defendants' conduct shocks our conscience or if the defendants violated a fundamental right deeply rooted in our tradition and history: Khan's claim fails. The defendants' alleged conduct is certainly obnoxious to general notions of good government: they apparently used their offices to coerce a citizen who was annoying one of their supporters. As to Serfecz, this conduct might have been a violation of *his* federal constitutional rights; that was the basis of the civil rights action Khan filed on his behalf. But Serfecz valued the offered settlement of the condemnation proceeding more than he valued his cause of action in his civil rights suit. It may be that, as Khan alleges, he only so valued that suit because the defendants wrongfully influenced him—by coercion or otherwise—but *as to Khan* that merely makes their conduct tortious. So Khan's remedy is to seek tort damages, which she is free to do in state court. *Cf. Lewis*, 523 U.S. at ——, 118 S.Ct. at 1721 (conduct was not due process violation although it may have been actionable under tort law). The defendants' tortious acts, which subject them to possible liability under state law, are not so extreme as to shock the conscience.

## B. Defendants' Claim for Attorney's Fees

■ Section 1988, Title 42, United States Code, provides: "(b) In any action or proceeding to enforce . . . [42 U.S.C.

§ 1983] ... the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs." Having prevailed on Khan's § 1983 claim, the defendants sought attorney's fees. Although the language of the statute seems not to distinguish between prevailing parties, prevailing plaintiffs receive attorney's fees as a matter of course, but prevailing defendants only receive attorney's fees if the plaintiff's claim was "frivolous, unreasonable, or groundless." *Christiansburg Garment Co. v. EEOC,* 434 U.S. 412, 422, 98 S.Ct. 694, 54 L.Ed.2d 648 (1978). The district court concluded Khan's claim was not frivolous because, although it was meritless, it was a good faith argument for an extension of existing law.

The parties dispute the appropriate standard of review for this issue. The statute's plain text obviously makes the awarding of attorney's fees a matter of the district court's discretion, and the courts have so interpreted it. *Jaffee v. Redmond,* 142 F.3d 409, 412 (7th Cir.1998) (award or denial of fees under § 1988 generally reviewed for an abuse of discretion). Here the defendants claim that the district court abused its discretion by misapprehending the law set out in our prior decisions. We review the district court's view of the law *de novo. Jaffee,* 142 F.3d at 412 ("as with all questions of law, we review *de novo* the alleged legals errors made by the district court in denying fees."); *see also Koon v. United States,* 518 U.S. 81, 100, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996) (if a court applies an erroneous view of the law, "by definition" it abuses its discretion).

As they did in the court below, the defendants focus on the supposed frivolity of Khan's substantive-due-process claim rather than her Contracts Clause claim. The defendants argue that the district court misapprehended the well established law of this circuit when it concluded that Khan had made a good faith argument for an extension of existing law. The defendants argue that our prior decisions, particularly *Wroblewski v. City of Washburn,* 965 F.2d 452 (7th Cir.1992), are sufficiently on point that Khan's legal arguments in support of her claim are frivolous. We disagree. *Wroblewski* did involve somewhat analogous facts, but they were not identical. In that case, the plaintiff claimed that certain state actors prevented him from getting a job at a marina that had been owned by the municipality but was being sold to a private entity. He argued that this violated his substantive-due-process rights because the defendants had deprived him of the fundamental liberty to engage in an occupation of his choice. We rejected that argument because the plaintiff was not prevented from engaging in his chosen occupation, merely prevented from getting a particular job. The defendants argue that by analogy this reasoning should apply to this case. This is a good argument for affirming, but not a compelling one for attorney's fees. *Wroblewski* and the other cases the defendants rely on do not dictate the result we reach today. There is a significant difference between making a weak argument with little chance of success—what Khan did—and making a frivolous argument with no chance of success. As the courts have interpreted § 1988, it is only the latter that permits defendants to recover attorney's fees. *See Munson v. Milwaukee Bd. of School Directors,* 969 F.2d 266, 270 (7th Cir.1992) (affirming award of fees to defendant where discovery produced only minimal support for plaintiff's factual allegations). The district court was therefore well within its discretion to deny fees here.

The judgment of the district court is AFFIRMED.