# United States Court of Appeals

## For the First Circuit

No. 06-2666

EUGENE MONGEAU,

Plaintiff, Appellant,

v.

CITY OF MARLBOROUGH, and STEPHEN REID,
Individually and as Commissioner of Inspectional Services
for the City of Marlborough and as a Member of the City
of Marlborough Site Plan Review Committee,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. William G. Young, U.S. District Judge]

Before

Torruella and Lipez, Circuit Judges,
and Stafford, Jr.,* Senior District Judge.

J. David Breemer, with whom Pacific Legal Foundation,
Catherine J. Savoie, Of Counsel, and Posternak, Blankenstein &
Lund, LLP were on brief, for appellant.
Judy A. Levenson, with whom Leonard H. Kesten, Deidre Brennan
Regan, and Brody, Hardoon, Perkins & Kesten, LLP were on brief, for
appellees.

June 22, 2007

---

* Of the District of Northern Florida, sitting by designation.

**TORRUELLA, <u>Circuit Judge</u>.**  This case asks us to determine whether a plaintiff in a land-use dispute must prove that a defendant engaged in behavior that "shocks the conscience" in order to prevail on a substantive due process claim related to that dispute.  Eugene Mongeau, a landowner, brought suit against the City of Marlborough (the "City") and Stephen Reid, the Commissioner of Inspectional Services for the City of Marlborough (collectively, "Defendants"), after Reid denied him a building permit.  Mongeau alleged, <u>inter alia</u>, that Reid, in his official capacity, violated Mongeau's Fourteenth Amendment substantive due process rights.  The district court granted judgment in favor of Reid, holding that Mongeau failed to allege that Reid engaged in behavior that shocked the conscience.  We reaffirm our earlier holdings[1] that a plaintiff may prevail on a substantive due process claim only if the defendant has engaged in behavior that "shocks the conscience," and affirm the judgment in favor of Reid.

## I. Background

In 1991, the City commenced eminent domain proceedings against various parcels of land.  Mongeau owned three of those parcels as part of a larger tract of land.  Mongeau agreed to sell the parcels to the City in exchange for $450,000 and a promise by

---

[1]  <u>See</u>, <u>e.g.</u>, <u>Pagán</u> v. <u>Calderón</u>, 448 F.3d 16, 32 (1st Cir. 2006); <u>SFW Arecibo, Ltd.</u> v. <u>Rodríguez</u>, 415 F.3d 135, 141 (1st Cir. 2005); <u>Néstor Colón Medina & Sucesores, Inc.</u> v. <u>Custodio</u>, 964 F.2d 32, 45 (1st Cir. 1992) (quoting <u>PFZ Properties, Inc.</u> v. <u>Rodríguez</u>, 928 F.2d 28, 31-32 (1st Cir. 1991)).

the City that Mongeau would be able to construct a "60 ft. by 80 ft. building" on the remaining tract "in full compliance with the building code and ordinance[s] of the City of Marlborough."

In 2003, Mongeau submitted an application to the City of Marlborough Building Department to construct a 35 ft. by 40 ft. building on the tract covered by the prior settlement. Reid denied the application, citing a lack of proper frontage and access as reasons for the denial. Later in 2003, Mongeau submitted an application to build a 60 ft. by 110 ft. building on the site. Reid again rejected the application, giving as reasons the proposed building's lack of frontage and location on a former railway right-of-way, and Mongeau's failure to submit the plan to the Site Plan Review Committee. Mongeau appealed the rejection of the building permit to the Marlborough Zoning Board of Appeals ("ZBA"). Reid wrote a memo to the ZBA urging them to reject Mongeau's appeal. On June 16, 2003, the ZBA granted Mongeau's appeal, allowing him to build a 60 ft. by 80 ft. structure, waiving the frontage, "sideyard planting," and "minimum centerline" requirements, and granting a right-of-way. The ZBA's decision required Mongeau to submit his plans for approval by the Site Plan Review Committee and the Conservation Commission and stated that the variances granted to Mongeau would expire in one year.

Mongeau and the Site Plan Review Committee, of which Reid is a member, embarked on a long series of negotiations for the

Committee's approval which required various revisions to Mongeau's building plans. Because of the delays, Mongeau sought and received extensions of his variances from the ZBA. In December 2004, Reid allegedly informed Mongeau that he had insufficient time to consider the revised site plan and suggested that Mongeau request another extension of the ZBA variance. On December 14, 2004, Mongeau applied for and received an extension until June 15, 2005. Mongeau alleges that the following day, Reid threatened to appeal the extension and told Mongeau that he would not issue a building permit for the structure.

Nevertheless, on May 23, 2005, the Site Plan Review Committee approved Mongeau's site plan. Likewise, the Conservation Commission also approved Mongeau's site plan, subject to certain conditions. A citizens committee filed an appeal of the conditions entered by the Conservation Commission. Mongeau alleges "on information and belief" that Reid "orchestrated" this appeal. Mongeau's variance lapsed on June 15, 2005, and the ZBA refused to grant another extension.

On September 6, 2005, the Massachusetts Department of Environmental Protection rejected the citizens committee's appeal and affirmed the order of the Conservation Commission. Mongeau then applied for a building permit. On October 19, 2005, Reid denied the permit application, stating that the ZBA variance had expired and that the "property is deficient in many ways." Reid

-4-

also stated that Mongeau could apply for another variance with the ZBA. Mongeau alleges that Reid's recalcitrance in refusing to issue the building permit was due to the fact that Mongeau had never offered to make an unspecified "mitigation payment" to the City of Marlborough.

On December 22, 2005, Mongeau filed suit in the Superior Court of Middlesex, Massachusetts against Defendants, seeking a declaratory judgment that he was entitled to construct his building, injunctive relief ordering the City of Marlborough to issue him a building permit, and damages arising from violations of 42 U.S.C. § 1983 and Massachusetts state law. Defendants removed the case to the United States District Court for the District of Massachusetts and moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). The district court granted judgment in favor of Defendants on all of Mongeau's federal claims and remanded the remaining state law claims to state court. In particular, the district court said that to state a substantive due process violation, a plaintiff needed to allege that defendants acted in a manner that shocked the conscience. The court ruled that most of Reid's alleged behavior was not so outrageous that it shocked the conscience. The court stated the allegation that Reid demanded "mitigation payments" before issuing the permit might shock the conscience, but that it was not alleged to be a common practice of the City, and as such, could not be imputed to Reid in

-5-

his official capacity.  As such, the court decided that Mongeau's allegations, taken as true, did not state a substantive due process claim against Reid in his individual capacity.[2]  Mongeau now appeals.

## II. <u>Discussion</u>

### A. Standard of Review

We review a district court's grant of judgment on the pleadings <u>de novo</u>.  <u>Mass. Nurses Ass'n</u> v. <u>N. Adams Req'l Hosp.</u>, 467 F.3d 27, 31 (1st Cir. 2006).  We "accept all the well-pleaded facts as true, draw all reasonable inferences in favor of the nonmovant . . . , and grant the motion only if it appears that the nonmovant could prove no set of facts that would entitle it to relief."  <u>Id.</u>

### B. The Requirements for a Substantive Due Process Claim

We have stated with "a regularity bordering on the monotonous" that to be liable for a violation of substantive due process rights, a defendant must have engaged in behavior that is "conscience-shocking": "the substantive due process doctrine may not, in the ordinary course, be invoked to challenge discretionary permitting or licensing determinations of state or local decisionmakers, whether those decisions are right or wrong."  <u>Pagán</u>, 448 F.3d at 33.  We have repeatedly affirmed the use of this

---

[2]  The court also granted judgment in favor of Reid on a procedural due process claim and found that Reid was entitled to qualified immunity on claims against him in his personal capacity.  Mongeau does not appeal these decisions.  The court then remanded the state-law claims to the Massachusetts Superior Court.

standard in the context of challenges to land use decisions. See, e.g., PFZ Properties, Inc., 928 F.2d at 31 ("[R]ejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation." (internal citations omitted)); see also SFW Arecibo, 415 F.3d at 141; Néstor Colón, 964 F.2d at 46.

Nevertheless, Mongeau argues that the shocks-the-conscience test is inappropriate when analyzing a substantive due process claim in the land use context, and that instead, we should use an "arbitrary and capricious" standard. Mongeau contends that the shocks-the-conscience standard is appropriate only when addressing a claim where state officials have made split-second judgments, i.e., when they have not had time to deliberate before coming to a decision to engage in the behavior that is the basis of the claim. Mongeau points to case law from other circuits which suggests that the application of the shocks-the-conscience standard to deliberate decisions by state officials is problematic. See, e.g., Khan v. Gallitano, 180 F.3d 829, 836 (7th Cir. 1999) ("[T]he Court [in County of Sacramento v. Lewis, 523 U.S. 833 (1998),] made clear that its shocks-the-conscience analysis was not generally applicable to all substantive-due-process claims."); Moreland v. Las Vegas Metro. Police Dep't, 159 F.3d 365, 372 (9th Cir. 1998)

("[T]he critical consideration [in determining whether to apply the 'shocks the conscience test'] [i]s whether the circumstances are such that 'actual deliberation is practical.'" (quoting Lewis, 523 U.S. at 851)). However, a closer examination of Lewis -- the principal case relied upon by Khan and Moreland – belies Mongeau's assertion. In Lewis, the Supreme Court did not reject the application of the shocks-the-conscience test to deliberate decisions, but instead stated that its application would vary with the circumstances. 523 U.S. at 851 ("[A]ttention to the markedly different circumstances of normal pretrial custody and high-speed law enforcement chases shows why the deliberate indifference that shocks in the one case is less egregious in the other."). We have never precluded a plaintiff from arguing that conduct that is the product of a deliberate and premeditated decision might be conscience-shocking whereas the same conduct might not be if it was undertaken in the heat of the moment. Ultimately such an argument would not affect our conclusion that only conscience-shocking behavior will constitute a substantive due process violation.

Mongeau also contends that our use of the shocks-the-conscience standard is justified only by a footnote in Creative Environments, Inc. v. Estabrook, 680 F.2d 822 (1st Cir. 1982). In that case, we stated that "[w]here a state has provided reasonable remedies to rectify a legal error by a local administrative body . . . current authority indicates that due process has been

-8-

provided, and that section 1983 is not a means for litigating the correctness of the state or local administrative decision in a federal forum." Id. at 832 n.9. Mongeau contends that this means that a substantive due process claim turns on the adequacy of state remedies, i.e., if state remedies were adequate, a substantive due process claim could only be brought when the defendant's conduct shocked the conscience.

This is a flawed reading of Creative Environments. First, it is more likely that footnote 9 was referring to the plaintiff's procedural due process rights; throughout the opinion, we referred to "due process" without distinguishing its procedural and substantive components. See id. at 831-32. Second, Creative Environments has not been subsequently cited by any First Circuit case for the proposition that a substantive due process claim is dependent on procedural remedies. Cf. Chongris v. Board of Appeals, 811 F.2d 36, 40 (1st Cir. 1987) (citing Creative Environments for the proposition that "[w]here state procedures -- though arguably imperfect -- provide a suitable form of predeprivation hearing coupled with the availability of meaningful judicial review, the fourteenth amendment guarantee of procedural due process is not embarrassed" (emphasis added)). Finally, we expressly rejected this proposition in Amsden v. Moran when we stated: "As distinguished from its procedural cousin, then, a substantive due process inquiry focuses on 'what' the government

has done, as opposed to 'how and when' the government did it." 904 F.2d 748, 754 (1st Cir. 1990).

In any case, Mongeau's arguments suffer from a more fatal defect: we recently decided that the shocks-the-conscience test applied to a substantive due process claim in the land use context, see SFW Arecibo, 415 F.3d at 141, and we are bound by the prior panel decisions of this Court. It is true that we have recognized at least two exceptions to the rule that we must follow the precedent of this Circuit. First, we may depart from the holding of a prior panel decision if "a preexisting panel opinion is undermined by subsequently announced controlling authority, such as a decision of the Supreme Court, a decision of the en banc court, or a statutory overruling." Eulitt v. Me. Dep't of Educ., 386 F.3d 344, 349 (1st Cir. 2004). Second, we may deviate from a prior holding of this Circuit in "those relatively rare instances in which authority that postdates the original decision, although not directly controlling, nevertheless offers a sound reason for believing that the former panel, in light of fresh developments, would change its collective mind." Williams v. Ashland Eng'g Co., 45 F.3d 588, 592 (1st Cir. 1995), abrogated on other grounds by Carpenters Local Union No. 26 v. United States Fid. & Guar. Co., 215 F.3d 136, 145 (1st Cir. 2000). We do not find, nor does Mongeau offer, any reason why either of these exceptions to the

doctrine of stare decisis should apply, and as such, we are bound by our decision in SFW Arecibo.

Mongeau rejoins that our precedent on this issue has been inconsistent, resulting in standards ranging from "clearly arbitrary and unreasonable," Roberts v. City of Woonsocket, 575 F.2d 339, 341 (1st Cir. 1978) (quoting Village Euclid v. Ambler Realty Co., 272 U.S. 365, 395 (1926)), to "when some basic and fundamental principle has been transgressed that 'the constitutional line has been crossed,'" Amsden, 904 F.2d 748, 754 (1st Cir. 1990) (quoting Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)), to a "truly horrendous situation[]," Néstor Colón, 964 F.2d at 45. While we have used various incantations to describe the standard for prevailing on a substantive due process claim, we have "decline[d] the invitation to sort out so wide a variety of labels." Amsden, 904 F.2d at 754. "[A]lthough the yardstick against which substantive due process violations are measured has been characterized in various ways, we are satisfied that, before a constitutional infringement occurs, state action must in and of itself be egregiously unacceptable, outrageous, or conscience-shocking." Id.

Thus, our precedent on this issue is both clear and binding on this case: in order to state a substantive due process claim of any ilk, a plaintiff must allege behavior on the part of the defendant that is so outrageous that it shocks the conscience.

-11-

## C. Mongeau's Claim

Having reaffirmed the proper standard for a substantive due process claim, we must now examine Mongeau's allegations to determine whether Reid's behavior shocks the conscience. The district court determined that nearly all of Mongeau's allegations -- that Reid had denied his building permit and interfered in the zoning process for improper reasons -- failed to shock the conscience. We agree. We rejected a similar claim in Licari v. Ferruzzi, where the plaintiffs alleged that "hostility and animus" motivated the revocation of a building permit and the issuance of certain enforcement orders. 22 F.3d 344, 349 (1st Cir. 1994). In the past, we have indicated that one of the problems with adjudicating claims of "bias" or "animus" in the zoning context is that "[e]very appeal by a disappointed developer from an adverse ruling by a local . . . planning board necessarily involves some claim that the board exceeded, abused or 'distorted' its legal authority in some manner, often for some allegedly perverse (from the developer's point of view) reason." Creative Env'ts, 680 F.2d at 833. For that reason, we have generally been hesitant "to involve federal courts in the rights and wrongs of local planning disputes" unless there is a "truly horrendous situation[]." Néstor Colón, 964 F.2d at 45. Taking all of Mongeau's allegations as true, we do not see such a conscience-shocking situation; we can

discern nothing more than a run-of-the-mill dispute between a developer and a town official.

The district court hinted that Mongeau might have stated a substantive due process claim inasmuch as he alleged that his permit was denied because he had failed to offer a "mitigation payment" to the City of Marlborough.  In Néstor Colón, we suggested that it was possible that bribery or threats could constitute a substantive due process violation.  Id. at 47.  However, at oral argument, counsel for Mongeau made it clear that he was not alleging that the City or Reid was seeking a "bribe."[3]  If Mongeau believes that the City or Reid has wrongly charged or demanded too much for his building permit, he may find recourse in other laws, but not in the substantive component of the Due Process Clause of the Fourteenth Amendment.  Such conduct, without more, cannot be said to transgress "some basic and fundamental principle . . . [such] that 'the constitutional line has been crossed'" and our conscience is shocked.  Amsden, 904 F.2d at 754.

---

[3]  In a particularly confusing exchange at oral argument, Mongeau's counsel stated that while Reid did not demand a bribe of any sort, the permit was not approved because Mongeau did not offer a "mitigation payment," which counsel insinuated was improperly demanded by the city.  We still do not understand what Mongeau's purported "mitigation payment" is, but we take counsel at his word that it would not constitute a "bribe" within the meaning of Néstor Colón.  Accordingly, we see no need to address the argument advanced by the district court that Reid's conduct did not form part of a pattern or common practice of the City.

### III. Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

**Affirmed**.