# In the

# United States Court of Appeals

## For the Seventh Circuit

_____

No. 04-2972

BRANDON TUN,

*Plaintiff-Appellee,*

v.

JOSELYN WHITTICKER and
JUDITH PLATZ,

*Defendants-Appellants.*

_____

Appeal from the United States District Court
for the Northern District of Indiana, Fort Wayne Division.
No. 1:03-CV-0217—**Roger B. Cosbey**, *Magistrate Judge.*

_____

ARGUED JANUARY 10, 2005—DECIDED FEBRUARY 16, 2005

_____

Before CUDAHY, KANNE, and EVANS, *Circuit Judges.*

EVANS, *Circuit Judge.*

  * No person shall . . . be deprived of life, liberty, or property, without due process of law . . . . (U.S. Constitution, amendment V)

  * [N]or shall any State deprive any person of life, liberty, or property, without due process of law . . . . (U.S. Constitution, amendment XIV, § 1).

As one commentator astutely observed,

  A reader of the Supreme Court's substantive due process cases can come to feel like a moviegoer who arrived late and missed a crucial bit of exposition.

> Where is the part that explains the connection between this doctrine and the text of the constitutional provisions from which it takes its name?[1]

This case requires that we once again wade into the murky waters of that most amorphous of constitutional doctrines, substantive due process. We start with the facts, which are undisputed insofar as they are material to the case.

Brandon Tun, a high school student and member of the wrestling team, was taking a shower in the boys' locker room of Wayne High School in Fort Wayne, Indiana, when a fellow student took pictures of him and three other wrestlers.[2] Quite naturally, the boys were naked while showering, but they also partially turned their backs to the camera and covered up their genitals. After the photos were taken, Tun was sitting on the bleachers in the gym, looking at the negatives, when he was spotted by David Mohr, the photography teacher and an assistant wrestling coach. Tun was giggling, which caused Mohr to become suspicious. When Tun saw Mohr he tossed the negatives aside, and Mohr confiscated them. From there on, events took several unfortunate turns, resulting in Tun's being expelled from school for 6 weeks. Tun, by his parents, sued the school district; two wrestling coaches, Gregory Rhodes and David Mohr; Joselyn Whitticker, Wayne High's principal who recommended Tun's expulsion; and Judith Platz, a hearing officer who presided at Tun's expulsion hearing and upheld Whitticker's recommendation. Cross-motions for summary judgment were filed, and Tun's, based on a substantive due

---

[1]  Professor John Harrison writing in the April 1977 issue of the *Virginia Law Review.*

[2]  There are four pictures in the record: one shows all four skinny boys, one has two of the boys, and the other two each show one boy. We don't know which of the boys is Brandon Tun.

process claim against Whitticker and Platz, was granted. Also, as relevant, Whitticker and Platz's claim of qualified immunity was denied. Today we resolve their appeal from both decisions.

After Mohr confiscated the negatives, he asked Tun where they came from and was told they came from the wrestling team student manager, named here only as "Constantine" (apparently a foreign exchange student who is sometimes called "Kostyantyn"). Mohr took the negatives to the head wrestling coach and then to John Hester, an administrator at the school. Hester asked Mohr to develop the pictures. During this process, Mohr noted that the photographs were on film issued to students in his class. After Mohr developed the prints he gave them to Hester, and an investigation was launched. Statements were obtained from Constantine and the four boys who appeared in the photos. Constantine said the boys asked him to take the pictures. One of the boys said they just played along with the "photo shoot" because they did not think there was film in the camera. The results of the investigation were reported to Whitticker, who ordered that Tun and the other boys be suspended for public indecency pending further investigation. Whitticker met with each boy and his parents.

After meeting with the parents, Whitticker began expulsion proceedings against the boys, alleging violations of Rule 22 and Rule 24 of the district's behavior code. Rule 22 prohibits "[p]articipating in inappropriate sexual behavior including . . . public indecency on school property . . . ." Rule 24 prohibits "[p]ossession and/or distribution of pornographic material which would reasonably be considered offensive by community standards for students, which are without redeeming social value . . . ." An expulsion hearing was convened, with Platz presiding. Tun was represented by counsel, who pointed out that the behavior code does not provide for expulsion for a violation of Rule 24 and that Tun could only be expelled if there were a violation of Rule 22,

which he said there was not because all Tun was doing was taking a shower in the boys' locker room. Despite what seems to us to be the attorney's faultless logic, Tun was expelled based on Platz's findings that

> Brandon Tun allowed another Wayne High School student to take photographs of him while nude in the boys' locker room. Brandon did not ask the student to stop taking pictures. He did not report the incident to any adults at Wayne High School.

> Brandon was in possession of the negatives of the photographs of himself and three other male students.

Tun appealed, pursuant to the school district's administrative review process, and Platz's decision was reversed. Tun was permitted to return to school after missing 6 weeks of classes. His disciplinary record was cleared so it does not reflect the expulsion. Tun also managed to make up the class work he missed. Nevertheless, Tun alleges that his substantive due process rights were violated, and Magistrate Judge Roger Cosbey, sitting by consent pursuant to 28 U.S.C. § 636, agreed. While Judge Cosbey's decision is quite thoughtful and very well-crafted, we cannot agree that the events in this case meet the high threshold for substantive due process claims. Because our review is *de novo, Sullivan v. Ramirez*, 360 F.3d 692 (7th Cir. 2004), the claim is doomed.

We have jurisdiction over this appeal because it involves a collateral order denying a qualified immunity defense. *See Mitchell v. Forsyth*, 472 U.S. 511 (1985). Qualified immunity is not simply a defense to liability. It also provides immunity from suit. *Saucier v. Katz*, 533 U.S. 194 (2001). It protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Knox v. Smith*, 342 F.3d 651

(7th Cir. 2003). Analysis of whether qualified immunity applies requires a two-step inquiry. First, viewing the facts in the light most favorable to the plaintiff, we must determine whether the official violated a constitutional right. If so, we must determine whether that right was clearly established at the time of the violation. *Saucier*. For a right to be clearly established,

> its contours "must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent."

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)) (citation omitted). The proper question to ask is "whether the state of the law [at the time of the incident] gave respondents fair warning that their alleged treatment of [the plaintiff] was unconstitutional." *Hope*, 536 U.S. at 741.

As Judge Cosbey observed, Tun's federal court complaint "is a confusing mix of legal and factual assertions." But out of that mix, the focal point of this case becomes whether Tun's substantive due process rights were violated. We know, of course, that substantive due process is a difficult concept to pin down. And, as we discussed in *Dunn v. Fairfield Community High School, District No. 225*, 158 F.3d 962 (7th Cir. 1998), it is not to be confused with procedural due process. This appeal does not involve Tun's procedural due process rights. After all, he had hearings, his attorney was present, and ultimately the discipline imposed on him was found to be improper and his record was cleared. What he contends, though, is that something about his expulsion implicated his federal constitutional substantive due process rights. Phrasing it in qualified

immunity terms, counsel at oral argument said that the school officials should have known that it is clearly established that they could not discipline Tun when there was no evidence of wrongdoing.

We are consistently reminded that the scope of substantive due process is very limited. *See Washington v. Glucksberg*, 521 U.S. 702 (1997). The Court is, it says, "reluctant to expand the concept of substantive due process because guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. Harker Heights*, 503 U.S. 115, 125 (1992). The essence of due process is the "protection of the individual against arbitrary action of government." *Wolff v. McDonnell*, 418 U.S. 539, 558 (1974); *Glucksberg*. Substantive due process involves the exercise of governmental power without reasonable justification. *Dunn*. It is most often described as an abuse of government power which "shocks the conscience." *Rochin v. California*, 342 U.S. 165 (1952).

Cases abound in which the government action—though thoroughly disapproved of—was found not to shock the conscience. Perhaps most notable in this genre is *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). The case involved a 100-mile-an-hour chase in which 16-year-old Philip Lewis was killed when the motorcycle on which he was riding tipped over; he was hit by the speeding patrol car and thrown 70 feet down the roadway. Lewis's parents claimed that the officer had disregarded department procedures for high-speed chases and that the officer's actions in causing Lewis's death "were an abuse of executive power so clearly unjustified by any legitimate objective of law enforcement as to be barred by the Fourteenth Amendment." At 840. Noting that actions violate the due process clause only if they can properly be characterized as "conscience shocking, in a constitutional sense" (*Lewis*, quoting *Collins*, 503 U.S. at 128), the Court found no due process violation; the officer's conduct did not shock the conscience.

It is one thing to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation. We have declined to impose constitutional liability in a number of situations in which we find the officials' conduct abhorrent. For instance, we have our own car-chase case in which we found no violation in the use of a tire-deflation device. *Bublitz v. Cotter*, 327 F.3d 485 (7th Cir. 2003). In *Schaefer v. Goch*, 153 F.3d 793 (7th Cir. 1998), there was no substantive due process violation when officers shot a woman to death on her own front steps during a standoff with the woman's husband.

School discipline cases have not escaped our attention. In *Dunn*, school band members received failing grades for playing two unauthorized pieces at a band program. We found no violation. *Remer v. Burlington Area School District*, 286 F.3d 1007 (7th Cir. 2002), involved a student plot to enter Burlington High School and shoot several students and teachers. M.R. was one of the plotters who withdrew from the conspiracy. Because he withdrew he was not criminally prosecuted, but he was expelled from school. In his § 1983 case he claimed violations of his procedural and substantive due process rights. As to his substantive rights, he claimed that there was inadequate evidence against him, a claim we soundly rejected.

School discipline cases have also found their way to the Supreme Court. In *Wood v. Strickland*, 420 U.S. 308 (1975), two high school girls spiked the punch at a school event and were expelled for the remainder of the semester. The amount of alcohol put in the punch was negligible, and the girls claimed that the suspension violated their substantive due process rights because there was no evidence on which to base the disciplinary action. The Supreme Court, in finding for the school district, said:

It is not the role of the federal courts to set aside

> decisions of school administrators which the court may view as lacking a basis in wisdom or compassion. Public high school students do have substantive and procedural rights while at school. See *Tinker v. Des Moines Independent Community School District*, 393 U.S. 503 (1969); *West Virginia State Board of Education v. Barnette*, 319 U.S. 624 (1943); *Goss v. Lopez*, 419 U.S. 565 (1975). But § 1983 does not extend the right to relitigate in federal court evidentiary questions arising in school disciplinary proceedings or the proper construction of school regulations. The system of public education that has evolved in this Nation relies necessarily upon the discretion and judgment of school administrators and school board members, and § 1983 was not intended to be a vehicle for federal-court corrections of errors in the exercise of that discretion which do not rise to the level of violations of specific constitutional guarantees. See *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968); *Tinker*, *supra*, at 507.

At 326.

In another alcohol-related case, a student was expelled for being drunk at school. The school had a rule against possession of certain drugs as classified by state law. Alcohol was not among those drugs. The district court and the court of appeals both held that the district's reliance on the law prohibiting drug possession when the offense involved alcohol violated the student's substantive due process rights. The Supreme Court disagreed, saying that, while it might be possible to imagine a situation in which a school board's interpretation of its own rules would be so "extreme as to be a violation of due process," this was not that case, and the board's interpretation of its rules controlled. *Bd. of Educ. of Rogers, Ark. v. McCluskey*, 458 U.S. 966, 970 (1982).

In our case, it seems that the professionals in this sad

train of events, from Mohr, to Rhodes, to Whitticker, and finally to Platz, exercised questionable judgment. After all, when you get right down to it, Tun and the other skinny wrestlers were just horsing around in the boys' locker room. This wasn't assaultive behavior, porno peddling, drug selling, gun toting, or any of the other serious matters that can cause real problems in a high school. Ripping up the pictures and telling the boys that they used bad judgment would have been more than enough medicine to cure this little ill. The overreaction by the defendants, including an overly broad reading of the district's behavior code, was regrettable. But we can't say that what the defendants did, considering the limitations set out in *McCluskey*, violated the due process clauses of the United States Constitution. But the situation does demonstrate the importance of providing procedural due process, which ultimately allowed Tun (and we assume the other boys) to prevail at the end of the day: his expulsion was set aside, his school records were cleared, and he returned to school.

Because there was no constitutional violation, we need not proceed to the second step of the qualified immunity analysis. However, even had we somehow found this incident to rise to the level of a constitutional violation, we could not find that the law was so clearly established that reasonable people would know they could not do what Whitticker and Platz did. If anything, the case law would probably reassure them that they could. They are entitled to qualified immunity.

Accordingly, the decision of the district court is REVERSED.

A true Copy:

 Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*