**David B. GAUDER, Plaintiff,**

v.

**Michael E. LECKRONE, Joanne E. Berg and John D. Wiley, Defendants.**

No. 04–C–767–C.

United States District Court, W.D. Wisconsin.

April 20, 2005.

Stephen J. Nicks, Madison, WI, for Plaintiff.

John R. Sweeney, Madison, WI, for Defendants.

## OPINION and ORDER

CRABB, District Judge.

After certain members of the University of Wisconsin–Madison varsity band misbehaved during the band's return from an officially sanctioned trip in March 2004, the band director imposed a collective fine of $1,200 on all of the band members on the trip and ordered each member's student records to be placed on administrative hold until his share of the fine was paid. The band director did not employ the university's written disciplinary process governing instances of non-academic misconduct before disciplining the band members. The question presented in this civil action for injunctive, declaratory and monetary relief under 42 U.S.C. § 1983 is whether the band director's actions violated the substantive and procedural due process rights of the band members.

Plaintiff David Gauder, a member of the band, contends that defendants Michael Leckrone, Joanne Berg and John Wiley imposed the fines and coerced band members to pay by placing administrative holds on their student records in violation of their rights under the due process clause of the Fourteenth Amendment. He seeks a declaration that defendants' policy of assessing fines for alleged misbehavior and implementing administrative holds on student records as a way of insuring payment is unconstitutional, an injunction preventing defendants from using these sanctions in the future and money damages. Subject matter jurisdiction is present. 28 U.S.C. § 1331.

Plaintiff initiated this case by filing a complaint in the Circuit Court for Dane County on September 8, 2004. Defendants removed the case to this court and filed their answer on October 13, 2004. The case is before the court on plaintiff's motion for class certification under Fed. R.Civ.P. 23 and defendants' motion to dismiss under Fed.R.Civ.P. 12(b)(6) and 12(c), which I will construe as a motion for judgment on the pleadings under Rule 12(c). *Forseth v. Village of Sussex,* 199 F.3d 363, 368 n. 6 (7th Cir.2000) (motion to dismiss filed after answer properly treated as motion for judgment on the pleadings).

In response to defendants' motion, plaintiff has filed a motion for summary judgment and proposed findings of fact. He requests that the court convert defendants' motion into a cross motion for summary judgment. Rule 12(c) provides that

If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

Because it is not necessary to look beyond the pleadings to address the arguments made by defendants, I will not convert defendants' motion for judgment on the pleadings into a cross motion for summary judgment. I will limit my analysis of defendants' motion for judgment on the pleadings to the allegations in the pleadings and the attached documents. Fed. R.Civ.P. 10(c); *Lehn v. Holmes,* 364 F.3d 862, 872 (7th Cir.2004) (incorporating into complaint contents of attached letter).

■ Fed.R.Civ.P. 23(c) states that the decision whether to certify a class should be made "at an early practicable time." However, nothing in Rule 23 prevents a court from considering a dispositive motion before inquiring into the propriety of class certification. *Cowen v. Bank United of Texas, FSB,* 70 F.3d 937, 941 (7th Cir. 1995); *see also Schweizer v. Trans Union Corp.,* 136 F.3d 233, 239 (2d Cir.1998). Because the viability of plaintiff's claims bears on his request for class certification, I will consider defendants' motion for judgment on the pleadings before plaintiff's motion for class certification.

Defendants' motion for judgment on the pleadings will be granted. Because plaintiff has not alleged that defendants engaged in conduct that is unjustified by any government interest or that shocks the conscience, he has failed to state a substantive due process claim. Defendants' motion will be granted as to plaintiff's procedural due process claim because plaintiff's allegations fail to allege a viola-tion of his procedural due process rights. Although I reach this conclusion in the course of considering whether defendants are entitled to qualified immunity, which applies only to requests for monetary relief, the conclusion that plaintiff has not stated a procedural due process claim means that he cannot recover *any* form of relief, monetary, injunctive or declaratory. Because plaintiff has failed to state a viable constitutional claim, his motions for class certification and summary judgment will be denied as moot.

For the sole purpose of deciding these motions, I find that plaintiff's complaint and defendants' answer fairly allege the following facts.

## ALLEGATIONS OF FACT

### A. *Parties*

At all relevant times, plaintiff David Gauder was a student at the University of Wisconsin–Madison enrolled in class no. 660–042, "Varsity Band," which is offered by the Music Department. Defendant Michael Leckrone is a professor in the university's College of Letters and Sciences and serves as the university's director of bands. Defendant Joanne Berg is the university registrar and defendant John Wiley is chancellor of the Madison campus.

### B. *Disciplinary Procedures*

Members of the university's varsity band are subject to the "UW Band Regulations of Conduct," promulgated by the university's band administration. At no time before or during the relevant events in this case did these regulations or any other university regulation or policy subject a band member to a monetary fine for engaging in inappropriate conduct, although students who participate in band are informed each semester of the expectations placed on them and told that fines can be imposed for rules violations. (The "UW

Band Regulations of Conduct" state that fines may be issued for violations of the contracts between the university and a band member related to band instruments and uniforms and for property damage that occurs when a student is representing the band.) At no time relevant to the events in this case did university regulations authorize the registrar to issue a records hold as a means of collecting a disciplinary fine imposed by the band administration on a student enrolled in varsity band.

The university has a disciplinary regulation, "UWS 17," that deals with student non-academic misconduct. This regulation covers a broad spectrum of conduct, including student behavior towards community members, behavior on university property and behavior related to university-sanctioned activities. UWS 17 establishes a disciplinary process that entitles a student to a hearing, an impartial factfinder, the right to counsel and the right to call and question witnesses.

The university's board of regents has empowered the registrar to place an administrative hold on a student's records upon written request of a university official if the student has unpaid fines, a delinquent loan account, refuses to return or repair university property or is otherwise indebted to the university. A records hold prevents a student from registering for the next term, obtaining an official transcript or having his or her graduation certified until the fines or indebtedness are paid or otherwise resolved.

### C. March 2004 Bus Trip

In early March 2004, plaintiff was among 29 members of the university band returning by bus to Madison, Wisconsin after performing at the Women's Big Ten Basketball Tournament in Indianapolis, Indiana. The trip was an officially sanctioned band event and had been supervised by a band field assistant. None of the defendants was on the bus. Sometime during the trip, the bus driver believed that the band members were being too noisy for him to drive safely. The driver and the field assistant told the band members that the driver would stop the bus and call the police if the group did not quiet down. Shortly thereafter, a band member other than plaintiff yelled something at the driver that caused him to pull the bus over and call the police. This individual was taken off the bus. After speaking with the police, he apologized to the driver and re-boarded the bus. Defendant Leckrone telephoned the field assistant and told him to inform the band members that they had failed their shared responsibility and that the situation would be addressed at the band's next rehearsal. (Neither the complaint nor the answer indicates how defendant Leckrone became aware of the problem on the bus.) The trip continued to Madison without further incident.

At the next rehearsal, defendant Leckrone announced that the 29 students on the trip would be assessed a group fine of $1,200.00 for the conduct on the bus. He explained that the fine was being imposed because one or more persons said the "f-word" six times during the trip, thereby invoking his policy that a band member is fined $200.00 each time he or she utters the "f-word," and because the band members failed to represent the university in a positive light. Each member's share of the fine was $41.38. To encourage the students to pay the fine, defendant Leckrone or someone acting at his direction told defendant Berg to impose records holds on the 29 students. Defendant Berg implemented the requested records holds.

Defendant Leckrone imposed the fine without making any findings of individual culpability or providing any of the students

with a hearing or any of the procedures contained in UWS 17.

### D. *Aftermath of the Discipline*

Plaintiff completed all of the requirements for graduation from the university's School of Business at the end of the Spring 2004 semester. He participated in graduation ceremonies on May 16, 2004. However, because he refused to pay the fine, he was unable to obtain a final transcript or certification of his graduation. (Plaintiff believes that the other 28 band members fined by defendant Leckrone have paid their fines and have had the administrative holds on their records lifted.) In an attempt to resolve the situation, plaintiff talked to several university officials about defendant Leckrone's actions, including Leckrone himself; Ervin Cox and Suzanne Jones, who both worked in the Office of the Dean of Students; John Schaffer, Dean of the School of Music; John Dowling, who works in the Office of Legal Counsel; and Phillip Certain, Dean of the School of Letters & Sciences. His efforts at resolving the matter were met with attitudes ranging from pleasant indifference to hostility. Therefore, plaintiff engaged the services of a lawyer who sent a letter dated June 25, 2004 to Paul Barrows, Vice Chancellor of Student Affairs, advising him that defendant Leckrone had ignored the procedures set out in UWS 17 and that plaintiff had been unable to obtain his final transcript from the university because of the hold on his records.

John Dowling, the university's senior legal counsel, responded to the letter to Barrows in a letter dated July 22, 2004, saying that the behavior of university band members "has long been a big problem and a source of considerable embarrassment for the university." He added that "Chancellor Wiley made it clear to the band administration that this pattern of incidents must immediately stop. The fines imposed by the band after the incident on the trip back to Madison after the Big Ten Women's Basketball Tournament were an attempt to comply with the Chancellor's mandate and to get this situation under better control." Dowling indicated that the fines would stand but the university would not take any further action to collect the fine from plaintiff. Instead, a record of the unpaid fine would "remain within the UW Band program." In addition, Dowling stated that the administrative hold on plaintiff's records would be lifted and indicated that he would instruct the band administration to "discontinue the practice of issuing fines to its members for incidents of misconduct."

## DISCUSSION

### A. *Standard of Review*

■ A motion for judgment on the pleadings filed pursuant to Fed.R.Civ.P. 12(c) is governed by the same standard applicable to a motion to dismiss under Fed.R.Civ.P. 12(b)(6). *GATX Leasing Corp. v. National Union Fire Ins. Co.*, 64 F.3d 1112, 1114 (7th Cir.1995). The only difference between the two is that on a Rule 12(c) motion, the court considers the answer as well as the complaint. Under either rule, a claim will not be dismissed unless "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S.Ct. 2229, 81 L.Ed.2d 59 (1984).

Because it pertains to this court's subject matter jurisdiction, I will start with defendants' argument that plaintiff has not suffered a concrete and particularized injury and therefore lacks standing to bring this case.

### B. *Standing*

To create a "case or controversy" under Article III of the Constitution, a party

seeking relief in federal court must show that it has suffered an "injury in fact" that is "concrete," "distinct and palpable," and "actual or imminent," as opposed to "conjectural" or "hypothetical." *McConnell v. Federal Election Commission*, 540 U.S. 93, 225, 124 S.Ct. 619, 157 L.Ed.2d 491 (2003). In addition, the party must show that its injury is "fairly traceable" to the defendant's conduct and that there is a "substantial likelihood" that the requested relief will redress the harm. *Id.; see also Raines v. Byrd*, 521 U.S. 811, 818–19, 117 S.Ct. 2312, 138 L.Ed.2d 849 (1997). Without such a showing, a federal court is without jurisdiction to consider the party's arguments on the merits. *Vermont Agency of Natural Resources v. United States ex rel. Stevens*, 529 U.S. 765, 778, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000) ("Questions of jurisdiction, of course, should be given priority—since if there is no jurisdiction there is no authority to sit in judgment of anything else.").

▮ Defendants argue that plaintiff has not demonstrated the existence of a concrete and particularized injury because the administrative hold on his university records has been released and the July 22, 2004 letter from John Dowling indicates that the university has no intention of collecting his portion of the group fine. In making this argument, defendants ignore *Carey v. Piphus*, 435 U.S. 247, 266, 98 S.Ct. 1042, 55 L.Ed.2d 252 (1978), which holds that "the denial of procedural due process should be actionable for nominal damages without proof of actual injury." *See also Wessel v. City of Albuquerque*, 299 F.3d 1186, 1193 (10th Cir.2002) (citing *Carey* ) (loss of procedural right sufficient to establish standing). In addition, the complaint establishes clearly that the denial of due process is fairly attributable to the sanctions imposed by defendant Leckrone and likely to be redressed by a favor-able decision. Aside from the alleged denial of due process, plaintiff alleges that the unpaid fine remains on his university record. This injury is sufficient to confer standing as well. *Cf. Matos ex rel. Matos v. Clinton School Dist.*, 367 F.3d 68, 73 (1st Cir.2004) (high school student has continuing interest in contents of high school record that may "become relevant as she looks ahead to graduate school or real-world employment"). The university's decisions to lift the administrative hold on plaintiff's records and to abandon efforts to collect plaintiff's portion of the fine do not rectify these injuries or deprive plaintiff of standing to sue.

### C. Failure to State a Substantive Due Process Claim

Defendants argue that plaintiff has not alleged that they engaged in conduct that "shocks the conscience" and cite *Dunn v. Fairfield Community High School Dist. No. 225*, 158 F.3d 962 (7th Cir.1998), a case involving a substantive due process challenge to a school disciplinary decision. I understand defendants' argument to be that plaintiff's allegations fail to state a claim of violation of substantive due process for which relief may be granted.

▮ Substantive due process is concerned with the results of government action. *Miller v. Henman*, 804 F.2d 421, 427 (7th Cir.1986) ("the nub of a substantive due process claim is that some things the state just cannot do, no matter how much process it provides"). Rather than guaranteeing an individual the right to a fair decision making procedure, the concept of substantive due process prevents the state from taking certain actions even if it provides procedural safeguards. It protects citizens against government conduct that is arbitrary or without reasonable justification. *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir.2005). However, as the Supreme

Court has emphasized, "only the most egregious official conduct can be said to be arbitrary in the constitutional sense." *County of Sacramento v. Lewis,* 523 U.S. 833, 846, 118 S.Ct. 1708, 140 L.Ed.2d 1043 (1998) (police officer did not violate substantive due process rights of passenger killed in high speed chase). *See also Galdikas v. Fagan,* 342 F.3d 684, 690–91 (7th Cir.2003) (allegations that school officials induced students to enroll in master's program by knowingly and falsely representing that program was accredited and took other steps to prevent accreditation not sufficiently egregious to shock conscience), *overruled on other grounds by Spiegla v. Hull,* 371 F.3d 928 (7th Cir.2004). To allege a violation of his substantive due process rights, plaintiff must allege conduct that "shocks the conscience" because it is " 'unjustifiable by *any* governmental interest.' " *Remer v. Burlington Area School District,* 286 F.3d 1007, 1013 (7th Cir.2002) (citing *Dunn,* 158 F.3d at 965).

In the context of school discipline, the limited protection offered by substantive due process reinforces the principle that federal courts are not in the business of setting aside every erroneous decision made by school administrators. *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 43 L.Ed.2d 214 (1975). The recent decision by the Court of Appeals for the Seventh Circuit in *Tun,* 398 F.3d 899, makes this clear. In *Tun,* school officials expelled a high school student who was caught with pictures of himself and several other students naked in the school showers. The officials contended that the student's actions violated two provisions in the school district's code of conduct prohibiting public indecency on school property and possession of pornographic material. At his expulsion hearing, the student argued that the indecency rule did not list expulsion as a possible punishment and that he had not violated the pornography

rule. School officials disagreed and expelled him.

Although the court of appeals was sympathetic to the student's arguments at his expulsion hearing, it concluded that the expulsion did not violate his substantive due process rights. Emphasizing the limited scope of protection offered by substantive due process, the court stated that "[i]t is one thing to say that officials acted badly, even tortiously, but—and this is the essential point—it is quite another to say that their actions rise to the level of a constitutional violation." *Id.* at 903. After reviewing several cases involving student discipline, the court concluded that the school officials may have overreacted and "exercised questionable judgment" but they had not violated the Constitution. *Id.* at 904.

■ Plaintiff makes two arguments in support of his substantive due process claim. He contends that defendant Leckrone ignored the university's established disciplinary process for incidents of non-academic misconduct. Also, he argues that defendants Leckrone and Wiley imposed sanctions that were not authorized in any written regulation applicable to the university or to the band specifically. In support of his arguments, plaintiff cites the court of appeals' decision in *Dunn v. Fairfield Community High School Dist. No. 225,* 158 F.3d 962 (7th Cir.1998). In that case, the student plaintiffs argued that their high school had "impos[ed] disciplinary measures unrelated to academic conduct and outside the parameters and intent" of the relevant school code and disciplinary policy. *Id.* at 964 (internal punctuation omitted). As punishment for playing unauthorized guitar songs at a school basketball game, the students were expelled from band class and given "F" grades. The court of appeals noted that

the plaintiffs' attempt to frame their argument as a substantive due process claim reflected a "failure to appreciate the difference between the procedural protections afforded by the Fourteenth Amendment against state deprivations and the far more limited substantive standards that Amendment imposes on state actors." *Id.* The court went on to analyze the claim under substantive due process standards. Although noting that "at some extreme," substantive due process would impose outer boundaries on the type of disciplinary measures public schools may use, *id.*, the court held that a substantive due process claim would not lie where the students "freely conceded that they had violated a school rule, that the rule was designed to preserve discipline in the classroom and to punish student insubordination, and that these were legitimate interests on the part of the school district." *Id.* at 966.

Plaintiff suggests that the court of appeals rejected the students' substantive due process claim because the policy under which they were given "F" grades was written down, filed with the principal and given to each student. This reading of *Dunn* is simply untenable; the court did not even mention in its analysis the fact that the band director's grading policy was written down.

The flaws in plaintiff's arguments are nearly identical to those in the arguments made in *Dunn.* His arguments relate to the adequacy of the process provided, not the ultimate result; in other words, plaintiff does not suggest that defendants could not have fined band students for misbehavior on band trips had they had a written policy in place and afforded each student a hearing with an individualized finding of guilt. As I noted above, substantive due process relates to government action that cannot be justified no matter how much process is given. *Miller,* 804 F.2d at 427.

Further, plaintiff does not deny that band members were misbehaving on the bus, that the fine was imposed as discipline for this conduct or that the school has a legitimate interest in curbing the kind of misbehavior that occurred. Although I might agree that defendants could and perhaps should have done more to limit the fines to only those students who acted out, defendants' failure to do so is not conscience-shocking in the constitutional sense. *Cf. County of Sacramento,* 523 U.S. at 847, 118 S.Ct. 1708 (only most egregious official conduct violates right to substantive due process).

To the extent plaintiff seeks to have this court review the substance of defendant Leckrone's decision to impose the fine and records holds, that inquiry is limited to determining whether the sanctions were imposed without any justification whatsoever. In his complaint, plaintiff acknowledges that defendant Leckrone disciplined the band members after being informed that they had been so noisy and disruptive that the bus driver had to stop the bus and call the police and that at least one of the members had used profanity on the bus. Instead of punishing the individuals personally responsible for the disruptive conduct, he chose to fine the entire bus contingent for failing "its shared responsibility" to represent the university in a positive light. Had defendant Leckrone fined the students for no reason at all, his decision might be actionable under the rubric of substantive due process. But that is not the situation here. Plaintiff's concession that a plausible justification existed for disciplining the band members dooms his substantive due process claim. This court cannot second guess the wisdom or propriety of defendant Leckrone's decision. *Wood,* 420 U.S. at 326, 95 S.Ct. 992 ("It is not the role of the federal courts to set aside decisions of school administrators which the court may view as lacking a

basis in wisdom or compassion."). I will grant defendants' motion for judgment on the pleadings as to plaintiff's substantive due process claim.

In addition to his substantive due process claim, plaintiff contends that defendants' actions violated his procedural due process rights, a contention defendants deny and for which they claim qualified immunity. Therefore, I must consider whether defendants are entitled to qualified immunity with respect to that claim.

### D. *Qualified Immunity*

■ The doctrine of qualified immunity shields state officials sued in their individual capacities from liability for monetary damages as long as their actions do not " 'violate clearly established statutory or constitutional rights of which a reasonable person would have known.' " *Behrens v. Pelletier,* 516 U.S. 299, 305, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). Once a defendant raises qualified immunity as a defense, the plaintiff bears the burden of proving that the law was so clearly established that the defendant would have known that his actions were illegal or unconstitutional. *Erwin v. Daley,* 92 F.3d 521, 525 (7th Cir.1996). The plaintiff must show that the record supports a finding of unconstitutional conduct and that the applicable constitutional standards were clearly established at the time in question. *Newsome v. McCabe,* 319 F.3d 301, 303 (7th Cir.2003); *Magdziak v. Byrd,* 96 F.3d 1045, 1047 (7th Cir.1996).

The first inquiry a court must make when considering the applicability of qualified immunity is whether the plaintiff has shown that the defendant's conduct violated a constitutional right, when the facts are viewed in the light most favorable to the party asserting the injury. *Saucier v. Katz,* 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001). In this case, plaintiff argues that his allegations indicate that defendants violated his right to procedural due process.

■ Procedural due process guarantees persons fair decision making processes before state actors deprives them of life, liberty or property. It is unconcerned with outcomes; as long as fair decision making processes are offered, procedural due process has been provided. Procedural due process claims must withstand a two-part inquiry. *Pugel v. Board of Trustees of the University of Illinois,* 378 F.3d 659, 662 (7th Cir.2004); *Doe v. Heck,* 327 F.3d 492, 526 (7th Cir.2003). Plaintiff must allege both that he was deprived of a protected liberty or property interest and that the deprivation occurred without due process. *Pugel,* 378 F.3d at 662; *Levenstein v. Salafsky,* 164 F.3d 345, 351 (7th Cir.1998).

Property interests are defined in terms of a "legitimate claim of entitlement." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). A claim of entitlement is not created by the Constitution but comes from "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* In determining whether a property interest exists, the court must look to the nature, not the weight, of the interest at stake. *Id.* at 570–71, 92 S.Ct. 2701.

■ Plaintiff stumbles out of the gate by incorrectly identifying the interest implicated in this case. He argues that, as an enrolled student, he had a property interest in continuing education. Setting aside the fact that it is an open question in this circuit whether a college or university

student has a protected interest in enrollment and continued attendance, *Pugel,* 378 F.3d at 662 (citing *Osteen v. Henley,* 13 F.3d 221, 223 (7th Cir.1993)), the allegations in plaintiff's complaint indicate that he was not deprived of this interest. According to plaintiff, after the fine and records hold was imposed, he completed the requirements for graduation from the university's business school and participated in graduation ceremonies. There is no indication, and one cannot reasonably be inferred, that plaintiff was suspended from school or prevented from attending classes for any length of time. This distinguishes the present case from *Pugel* and *Osteen,* which involved students who had been expelled from their respective schools, and this court's decision in *Martin v. Helstad,* 578 F.Supp. 1473 (W.D.Wis.1983), in which school officials revoked a student's admission to law school.

■ Had plaintiff paid the fine before filing his lawsuit, he would have a property interest at stake. *Lesser v. Neosho County Community College,* 741 F.Supp. 854 (D.Kan.1990) (member of college baseball team had property interest in money paid as fines for violations of team rules). It is less clear that an individual who refuses to pay a fine has been deprived of "property" for the purpose of due process; by resisting the fine, plaintiff did not part with his $41.38. However, the fine was not the sum total of the discipline imposed in this case; an administrative hold was placed on plaintiff's records, preventing him from obtaining certification of his graduation and a final transcript for approximately two months after graduating. The question is whether plaintiff has a property interest in these items.

Plaintiff does not allege that Wisconsin law or any University of Wisconsin rule, regulation, policy or longstanding practice establishes a legitimate claim of entitlement to certification of his graduation and a final transcript, but it is reasonable to conclude that a university student who completes all of the requirements necessary to graduate has a legitimate claim of entitlement to a final transcript and certification of his graduation. Surely defendants would not discount the importance of an officially certified degree and transcript to a college graduate entering the job market. At this stage of the proceedings, I will assume that plaintiff's complaint sufficiently alleges the deprivation of a protected property interest.

The next question is whether plaintiff has alleged that he was deprived of that interest without due process. Plaintiff argues that he was denied due process because defendants did not implement the procedure set out in UWS 17, thereby denying him a hearing before an impartial fact-finder, the right to counsel and the right to call and question witnesses. In addition, plaintiff argues that defendant Leckrone violated plaintiff's due process rights by disciplining him without first determining whether he had engaged in any of the disruptive conduct on the bus.

■ Standing alone, plaintiff's allegation that defendants failed to employ the university's procedures for discipline related to non-academic misconduct is frivolous because a professor's failure to impose discipline in compliance with a state university's written disciplinary code does not violate the Fourteenth Amendment. *Martin v. Shawano–Gresham School Dist.,* 295 F.3d 701, 706–07 (7th Cir.2002); *Hill v. Trustees of Indiana University,* 537 F.2d 248, 252 (7th Cir.1976). This is a specific application of the general principle that a state's failure to follow its own procedures does not necessarily violate due process. *Osteen v. Henley,* 13 F.3d 221, 225 (7th Cir.1993) ("a violation of state law ... is not a denial of due process, even if the

state law confers a procedural right"); *Colon v. Schneider*, 899 F.2d 660, 670 n. 6 (7th Cir.1990); *Siu v. Johnson*, 748 F.2d 238, 244 (4th Cir.1984) ("procedures provided for creating and terminating" an interest "do not define in detail the process constitutionally due for protection of the interest, except to the extent that they may coincide with elements of that process as independently defined by federal law."). To put it another way, federal law defines the requirements of due process in a given situation, not state law. *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 541, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985).

The Supreme Court has held that high school students facing temporary suspensions "must be given *some* kind of notice and afforded *some* kind of hearing" in order to avoid "unfair or mistaken exclusion from the educational process." *Goss v. Lopez*, 419 U.S. 565, 579, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975) (emphasis in original); *see also Dixon v. Alabama State Board of Education*, 294 F.2d 150, 158 (5th Cir. 1961) (due process requires notice and opportunity for hearing before college students may be expelled for misconduct). In *Goss,* the Court characterized the required process as " 'rudimentary', amounting only to 'an informal give-and-take between student and disciplinarian.' " *Schaill by Kross v. Tippecanoe County School Corp.,* 864 F.2d 1309, 1323 (7th Cir.1988) (quoting *Goss,* 419 U.S. at 584, 95 S.Ct. 729). In this case, plaintiff suffered nothing more than a two-month delay in receiving his transcript and certification of his graduation, a far less serious deprivation than the suspensions in *Goss* or the expulsions in *Dixon.* At most, plaintiff was entitled to notice of the reasons for the discipline and a chance to present his case.

Plaintiff's allegations suggest that he was given notice of the reasons why he and the other band members were being fined; he alleges that defendant Leckrone explained the reasons for imposing the fine and records holds to the band at the class immediately following the bus trip. Plaintiff's allegations suggest also that he was given more than one opportunity to be heard after defendant Leckrone imposed the fine and records holds. He alleges that he spoke about the sanctions with defendant Leckrone and five other university officials, including the deans of the School of Music and the School of Letters & Sciences as well as John Dowling of the university's Office of Legal Counsel. Although these conversations were not formal "hearings," they provided plaintiff an opportunity to be heard by individuals in positions to afford him relief if they believed it was warranted. Although plaintiff alleges that some of these individuals met him with hostility, he does not contend that his complaints were not heard and considered. The fact that none of the officials reversed defendant Leckrone's decision does not mean that plaintiff was deprived of due process. Thus, I conclude that plaintiff's allegations fail to allege a violation of his procedural due process rights. This conclusion makes it unnecessary to consider whether defendants are entitled to qualified immunity.

 (Even if I concluded that plaintiff had alleged conduct on the part of defendants that violated his due process rights, I would find that defendants were entitled to qualified immunity because a student's procedural rights in connection with the imposition of group discipline were not clearly established before March 2004. Before that date, no decision from either the Supreme Court or the Court of Appeals for the Seventh Circuit established that plaintiff was entitled to a formal hearing or anything more than a "give-and-take" discussion with defendant Leckrone before or after the imposition of a group

fine or any other form of collective discipline. No decision from either of those courts holds that a student is entitled to a more formal hearing before or after an administrative hold is placed on his school records.)

Because plaintiff failed to allege a violation of his procedural due process rights, he cannot obtain any form of relief on this claim. Therefore, defendants' motion for judgment on the pleadings as to plaintiff's procedural due process claim will be granted with respect to all forms of relief sought by plaintiff.

## ORDER

IT IS ORDERED that the motion for judgment on the pleadings filed by defendants Michael Leckrone, Joanne Berg and John Wiley, dkt. # 12, is GRANTED. Plaintiff David Gauder's motion for class certification, dkt. # 8, and motion for summary judgment, dkt. # 23, are DENIED as moot. The clerk of court is directed to enter judgment for defendants and close this case.