In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-3259

JAMES MCDONALD and KAREN MCDONALD,

*Plaintiffs-Appellants*,

*v.*

HOUSEHOLD INTERNATIONAL, INC., d/b/a
HOUSEHOLD FINANCE CORP., and UNITED
HEALTHCARE CORP., d/b/a UNITED
HEALTHCARE INSURANCE CO.,

*Defendants-Appellees*.

---

Appeal from the United States District Court
for the Southern District of Indiana, Indianapolis Division.
No. 1:03-cv-01698 RLY-TAB—**Richard L. Young**, *Judge*.

---

ARGUED FEBRUARY 16, 2005—DECIDED SEPTEMBER 29, 2005

---

Before EASTERBROOK, WOOD, and SYKES, *Circuit Judges*.

WOOD, *Circuit Judge*. At the time he began working for Household International, Inc. (Household), James McDonald expected that he would receive health insurance that included prescription drug coverage under the group insurance policy that the company maintained with United HealthCare Corporation (United). McDonald needed prescription drugs to control his blood pressure. For reasons that are unclear, his insurance was not activated promptly. Two months after he started work, he suffered a cata-

strophic intercerebral hemorrhagic stroke. In this lawsuit, McDonald and his wife, Karen McDonald, have raised a variety of state-law claims that turn on the fact that McDonald did not receive the promised insurance coverage in time. The district court found that the federal Employee Retirement Income Security Act, commonly called ERISA, preempted the state law theories and on that basis dismissed the complaint. We conclude that although the district court was correct about ERISA preemption, the dismissal was premature. Parties do not need to plead legal theories in their complaints in federal court, and thus the McDonalds are entitled to go forward and litigate their claim under ERISA.

# I

Our account of the facts accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in favor of the McDonalds, as this case comes to us from a dismissal under Rule 12(b)(6). See, *e.g.*, *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000). James McDonald began working for Household on November 19, 2001. A few days before that, on November 16, he received an employment confirmation letter from Household stating "[y]our health and life insurance will be effective 30 days from your start date." That meant that as of December 19, 2001, his insurance should have been in place. Unfortunately, it was not. After December 19, McDonald repeatedly tried to get his prescription for Vasotec blood pressure medication filled, but he was told each time that the paperwork had not come through and he did not yet have any benefits. Unable to pay for the drugs himself, McDonald simply went without his medication from December 19 until January 15, 2002. During that time, he made numerous requests to Household and United pleading with them to activate his insurance benefit

coverage. Nothing happened. Instead, on January 15, he had a catastrophic stroke.

McDonald and his wife filed this lawsuit on November 13, 2003, invoking the diversity jurisdiction of the district court. The amount in controversy exceeds $75,000, and the McDonalds properly alleged that they were both citizens of Indiana. Their allegations about the corporate defendants were less complete than they should have been, but they correctly asserted that Household International, Inc., and Household Finance Corporation (which, contrary to the implication of the complaint, are two separate entities) are both incorporated in Delaware and both have their principal places of business in Illinois. United HealthCare Corporation actually merged with United Health Group, which is a Minnesota corporation with its principal place of business in Minnesota. The complaint referred to United HealthCare "d/b/a United Health Insurance Company," but the latter is also a separate corporation that is a wholly owned subsidiary of United Health Group. United Health Insurance is a Connecticut corporation, according to public records, and its offices are in Connecticut. If this case depended entirely on diversity jurisdiction, we would probably be inclined to remand for the limited purpose of clarifying the fact that these facts accurately represent United Health Insurance's citizenship. Given our conclusion about ERISA preemption, however, the case is securely within the federal question jurisdiction, and we have no need to take this step. For convenience, in the remainder of this opinion, we refer to the Household entities as "Household," and to the United HealthCare entities as "United."

The complaint was divided into six counts, five of which raised different theories supporting McDonald's claim, and the sixth of which was for loss of spousal services and consortium for Mrs. McDonald. Briefly, Count I asserted that Household had been negligent in failing to procure insurance for McDonald; Count II claimed that United

negligently failed to process McDonald's insurance application and to secure insurance for him, in particular pharmaceutical coverage; Count III raised a breach of contract claim against Household, which had promised in the November 16 letter to give McDonald health insurance under its policy, which included prescription drug benefits; Count IV was a similar breach of contract claim against United, alleging that United had received premiums from McDonald in exchange for the health policy; and Count V asserted that both Household and United had committed acts of gross negligence, willful or wanton misconduct, or intentional wrongs that led to McDonald's lack of health coverage and ultimately to the stroke.

Both Household and United filed a motion to dismiss under FED. R. CIV. P. 12(b)(6), claiming that the McDonalds had failed to state any claims upon which relief could be granted because, any way one looked at the case, it was really one for benefits under an ERISA plan and thus the state-law theories were preempted by ERISA. The district court found this argument persuasive and entered an order dismissing the complaint. In that order, the court said that the plaintiffs could "refile their complaint requesting appropriate relief pursuant to ERISA within 30 days" of the date of the order, August 3, 2004. The McDonalds did not accept that invitation. Instead, on August 30, 2004, three days before the time to amend expired, they filed their notice of appeal.

## II

Concerned that the district court's order of dismissal did not qualify as a final judgment, we ordered the parties to file jurisdictional memoranda addressing the subject of appellate jurisdiction. Relying principally on *Tifft v. Commonwealth Edison Co.*, 366 F.3d 513 (7th Cir. 2004), all parties argue that this case became final as a practical

matter no later than September 2, 2004, which was the last day when plaintiffs could have filed an amended complaint. See *id.* at 516 n.3. A notice of appeal that is filed too early is treated as if it was filed on the date when judgment was entered. See FED. R. APP. P. 4(a)(2). As in *Tifft,* this case is finished as far as the district court is concerned, and the dismissal for all practical purposes is now one with prejudice, whatever the judge might have said about the time period between August 3, 2004, and September 2, 2004. We are thus satisfied that the judgment of the district court dismissing the complaint has now become a final one, and that the appeal can proceed. We add, however, that these procedural shortcuts are undesirable, both because they can lead to wasteful premature efforts to appeal and because they leave all parties concerned unsure about the status of their rights. Moreover, we expressly decline to rely on the plaintiffs' alternate theory to support appellate jurisdiction, which is that there was no amendment that they could offer that would save the complaint. Our reasons for doing so will become clear in the remainder of this opinion.

   The central issue here is whether the McDonalds' complaint failed to state a claim upon which relief could be granted, as the district court concluded. Before addressing that, we must review the standards for evaluating a motion under Rule 12(b)(6). That rule does not stand in isolation from the remainder of the Federal Rules of Civil Procedure. Instead, it must be read in conjunction with the other rules governing pleadings, principally Rule 8(a). Rule 8(a) requires only "(1) a short and plain statement of the grounds upon which the court's jurisdiction depends, . . . (2) a short and plain statement of the claim showing that the pleader is entitled to relief, and (3) a demand for judgment for the relief the pleader seeks." This is a notice pleading standard, not a fact pleading standard, as the Appendix of Forms following the Civil Rules illustrates. This court has repeatedly held that pleaders in a notice system do not have

any obligation to plead legal theories. See, *e.g.*, *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003); *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000); *La Porte County Republican Cent. Comm. v. Bd. of Comm'rs of County of La Porte*, 43 F.3d 1126, 1129 (7th Cir. 1994).

In a case very much like this one, where an employee sued his employer for an alleged wrongful failure to pay certain severance and pension benefits under a contract, the employee urged that he was relying solely on state law, while the employer took the position that the case fell within ERISA's broad ambit. See *Bartholet v. Reishauer A.G. (Zürich)*, 953 F.2d 1073 (7th Cir. 1992). In *Bartholet,* this issue governed whether the case was removable from state court to federal court: if the complaint alleged state-law theories, then it appeared that it had to stay in state court (or at least our opinion reveals no alternative basis for federal jurisdiction); if the complaint was an ERISA claim in state-law disguise, the action was removable to federal court under 28 U.S.C. § 1441(b). After concluding that the suit arose under ERISA or nothing at all, see 953 F.2d at 1077, we had this to say about the decision of the district court to dismiss the suit under Rule 12(b)(6):

> It does not follow, however, that Bartholet's suit should have been dismissed under Rule 12(b)(6). The district judge believed that until Bartholet amended his pleadings to invoke ERISA, all he had was a claim arising under state common law, and as state law is preempted the complaint failed. The assumption implicit in this approach is that a complaint must plead law as well as fact. Why? . . .
>
> Common law pleading required the advocate to match facts to a legal theory, the "form of action." Code pleading ended up in much the same place, as courts read the code formula "facts constituting a cause of action" to require the pleader to state a legal theory. . . . "Cause of action" does not appear in the Rules of Civil

> Procedure, which uses "claim for relief" to denote a rejection of both common law and code approaches and a new, latitudinarian approach. . . . A complaint under Rule 8 limns the claim; details of both fact and law come later, in other documents. Instead of asking whether the complaint points to the appropriate statute, a court should ask whether relief is possible under any set of facts that could be established consistent with the allegations. . . . A drafter who lacks a legal theory is likely to bungle the complaint (and the trial); you need a theory to decide which facts to allege and prove. But the complaint need not identify a legal theory, and specifying an incorrect theory is not fatal.

953 F.2d at 1078-79.

We have quoted at length from *Bartholet* because, as should be apparent, the present case is so similar. The district court thought that the consequence of a decision that the McDonalds were bringing a suit that fell within the territory covered by ERISA had to be either dismissal under Rule 12(b)(6) or an amendment of the complaint. This was error. The real question was whether relief was possible based on any legal theory—ERISA included— under any set of facts that could be established consistent with the allegations. We therefore turn to that question.

Our account of the complaint shows that it relied on conventional common law theories: torts, either based on negligent actions or intentional actions, contracts, and loss of consortium. The complaint makes it equally clear that the central fact underlying each of the legal theories presented is the fact that James McDonald did not receive the medical insurance benefit (in particular the prescription drug benefit) that he was promised. The question is whether ERISA, which "comprehensively regulates, among other things, employee welfare benefit plans that, through the purchase of insurance or otherwise,

provide medical . . . care," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987), preempts any or all of those state laws.

The statute provides the starting point for our analysis. Section 514(a) says that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan." 29 U.S.C. § 1144(a). The trick, as the Court explained in *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Insurance Co.*, 514 U.S. 645 (1995), is to determine how close a relation the state law must have to the plan. In *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85 (1983), the Court held that "[a] law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." *Id.* at 96-97. It went on to stress that ERISA does not preempt "only state laws specifically designed to affect employee benefit plans," *id.* at 98, or "only state laws dealing with the subject matters covered by ERISA,*" id.* Instead, as the Court reiterated later in *Aetna Health Inc. v. Davila*, 124 S.Ct. 2488 (2004), "ERISA includes expansive pre-emption provisions, which are intended to ensure that employee benefit plans regulation would be exclusively a federal concern." *Id.* at 2495 (internal citations and quotations omitted).

McDonald acknowledges this, but he argues that his case is more like *Travelers*, in which the Court declined to find that state law claims were preempted by ERISA. It is true that the Court came to that conclusion in *Travelers*, but we find that case distinguishable from his. In *Travelers*, the Court noted that the general New York statute required hospitals to collect a surcharge from patients covered by any kind of commercial insurer—an ERISA plan, private purchase, or otherwise. The surcharge statute did not mandate any change in the benefits provided under any particular plan. Under those circumstances, the Court found that ERISA did not preempt the state law.

McDonald's claim looks much more like the one the Court considered in *Davila*, *supra*, where two individuals sued their respective HMOs for alleged failures to exercise ordinary care in the handling of coverage decisions. But it turned out that the HMOs were merely implementing coverage restrictions that appeared in the ERISA-regulated plans that the HMOs were administering. See 124 S.Ct. at 2497-98. The proximate cause of any injury the plan participant and beneficiary suffered was therefore the failure of the plan to cover the requested treatment, not any independent decision of the HMO. The Court thus found that the claims in *Davila* were preempted by ERISA. In so doing, it rejected a number of arguments that had persuaded the court of appeals. The fact that the respondents were trying to assert a tort claim, and that they were not seeking reimbursement for benefits denied to them, was not significant; otherwise, preemption would depend on the label attached to a particular theory. *Id.* at 2498. Furthermore, the fact that state law provided remedies beyond those authorized by ERISA § 502(a), 29 U.S.C. § 1132(a), was of no importance. *Id.* at 2499. What was material was the wording of the plans themselves, which ultimately determined the coverage decisions. *Id.*

Returning to McDonald's complaint, we can see that it focuses on the defendants' failure to give McDonald the benefits under the medical plan that he had been promised. This is precisely the kind of claim that ERISA § 502(a) allows plan participants to bring. That section reads as follows, in pertinent part:

> A civil action may be brought (1) by a participant or beneficiary . . . (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.

McDonald was an employee of Household from November 19, 2001, at least until the time of his stroke. ERISA defines

the term "participant" to mean "any employee or former employee of an employer . . . who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer . . . ." ERISA § 3(7), 29 U.S.C. § 1002(7). McDonald's argument that he was not a participant, because no one in the outside world recognized him as such when he tried to fill his prescriptions, confuses the lay definition of that term with the statutory definition. Under the statute, he was a participant and could have sued to compel the provision of benefits due to him under § 502(a). See also *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 117 (1989).

We conclude, therefore, that McDonald's state law claims were preempted by ERISA, as the district court held. The question remains whether the facts he has alleged could, under the favorable standard that applied to Rule 12(b)(6) motions, support any kind of relief. We do not disagree with McDonald's implicit concession that he cannot recover consequential damages in an ERISA action, at least as matters stand at present. See *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985); see also *Davila*, 124 S.Ct. at 2503 (Ginsburg, J., concurring). This fact may knock out a large portion of what he and Mrs. McDonald were hoping to recover in this action. On the other hand, as a plan participant at the time of his stroke whose benefits were allegedly wrongfully being denied, depending on the terms of the plan, he may have a claim for reimbursement of the medical expenses he incurred and continues to incur. We cannot say anything more specific at this juncture; it is enough that his pleadings entitle him to explore these possibilities further.

## III

It will be up to the McDonalds on remand to decide whether they wish to proceed with their case or to abandon it. In that connection, they may wish to take note

of Justice Ginsburg's comment in her concurring opinion in *Davila*, in which she drew attention to the Government's suggestion that ERISA "as currently written and interpreted, may allo[w] at least some forms of 'make-whole' relief against a breaching *fiduciary* in light of the general availability of such relief in equity at the time of the divided bench." *Id.* at 2504 (internal quotations omitted). (We note that in *Davila*, as here, the respondents had declined the opportunity to amend their state-law complaints to add ERISA claims, *id.* at 2502-03 n.7, but it appears that no one argued to the Court that this step was unnecessary, and it thus had no occasion to reach the point we have discussed in this opinion.)

The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*