In the

# United States Court of Appeals
## For the Seventh Circuit

---

No. 04-4162

ANITA CHRISTENSEN and ROBERT ALTY,

*Plaintiffs-Appellants,*

*v.*

COUNTY OF BOONE, ILLINOIS, and EDWARD KRIEGER,

*Defendants-Appellees.*

---

Appeal from the United States District Court for the
Northern District of Illinois, Western Division.
No. 04 C 50219—**Philip G. Reinhard**, *Judge.*

---

ARGUED DECEMBER 1, 2005—DECIDED MARCH 21, 2007

---

Before EASTERBROOK, *Chief Judge*, and RIPPLE and
KANNE, *Circuit Judges.*

PER CURIAM. Anita Christensen and Robert Alty, an
unmarried couple and plaintiffs in this civil rights action,
allege that they have been stalked and harassed unjustifi-
ably by Edward Krieger, a Deputy Sheriff of Boone County,
Illinois. Specifically, they allege that Deputy Krieger
interfered with the couple's constitutional right to be
free from unreasonable searches and seizures and their
right to intimate association. They further allege that the
Deputy's employer, Boone County, was responsible for the
Deputy's actions. The complaint also contains a pendent

state law claim asserted solely against Deputy Krieger for intentional infliction of emotional distress.

Deputy Krieger and Boone County filed a motion to dismiss for failure to state a claim upon which relief can be granted. See Fed. R. Civ. P. 12(b)(6). The district court granted the defendants' motion; it held that the plaintiffs had failed to plead either a cognizable constitutional violation or, with respect to the state law count, the elements of a common law tort. The plaintiffs now appeal this ruling. We agree with the district court that the Fourth Amendment claim is meritless and hold that it was properly dismissed. With respect to the claim based on the right to intimate association and the claim alleging intentional infliction of emotional distress, we believe that the pleading requirements of Rule 8 have been satisfied but that the claim fails on the merits. We reinstate the plaintiffs' claims under state law. Accordingly, we affirm in part and reverse in part the judgment of the district court.

## I. BACKGROUND

### A. Facts

Because this case comes to us from a dismissal under Rule 12(b)(6), we must accept all well-pleaded allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiffs. See *Marshall-Mosby v. Corporate Receivables, Inc.*, 205 F.3d 323, 326 (7th Cir. 2000).

Robert Alty is a police officer for the City of Belvidere, Illinois. In 1998 he arrested a driver for operating a vehicle while under the influence of alcohol. That driver turned out to be a friend or relative of Edward Krieger, a Deputy Sheriff of Boone County, Illinois. This incident resulted in animosity between the two officers that

culminated in a face-to-face altercation at some point in 2001. According to the allegations of the complaint, after that incident, Deputy Krieger engaged in "a pattern of on-duty conduct designed to harass, annoy, and intimidate" Officer Alty and his girlfriend, Anita Christensen. Specifically, the couple alleges that Deputy Krieger repeatedly followed them, both individually and with each other, while they drove on Boone County streets; parked his squad car in front of Ms. Christensen's place of employment in order to watch her; and sat in his police car outside of businesses that the plaintiffs were visiting in an effort to cause the couple "difficulties with the proprietors of such establishments."

Ms. Christensen and Officer Alty claimed that Deputy Krieger's actions were performed under color of state law and deprived them of their rights to privacy, freedom of association, freedom from unreasonable searches and seizures and "substantive due process rights under the First, Fourth, Fifth, and Fourteenth Amendments." The complaint further alleges that Officer Alty and Ms. Christensen had filed numerous complaints with Deputy Krieger's supervisors at the Boone County Sheriff's Department, but that the Department had not taken any action to correct the situation. Finally, the complaint alleges that Deputy Krieger's conduct constituted the intentional infliction of emotional distress under Illinois law.

**B. District Court Proceedings**

The district court dismissed the plaintiffs' action for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). First, with respect to the plaintiffs' Fourth Amendment claim, the court concluded that the complaint failed to identify any legitimate expectation of privacy that had been invaded by Deputy

Krieger. Second, the court held that the plaintiffs' "intimate association" claim failed because they had not alleged any actual interference with their relationship. In the court's view, the plaintiffs' assertions of feeling annoyed and harassed did not allege an impact on the relationship itself. Finally, the court dismissed the plaintiffs' intentional infliction of emotional harm claim because they had not pleaded a severe emotional injury and because Deputy Krieger's behavior, as described in the complaint, was "nowhere near to being extreme or outrageous as that element of the tort is defined by Illinois courts."

## II.  DISCUSSION

We must decide de novo whether the plaintiffs' complaint states a claim upon which relief could be granted. See *Williams v. Seniff*, 342 F.3d 774, 792 (7th Cir. 2003). A motion under Rule 12(b)(6) challenges the sufficiency of the complaint, and dismissal of an action under this rule is warranted only if "no relief could be granted under any set of facts that could be proved consistent with the allegations." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000) (internal quotation marks omitted). Under the notice pleading regime of the Federal Rules of Civil Procedure, the plaintiffs' complaint must contain only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Apart from several limited exceptions, a "short and plain statement" exists when the complaint pleads a "bare minimum [of] facts necessary to put the defendant on notice of the claim so that he can file an answer." *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002); see also *Kolupa v. Roselle Park Dist.,* 438 F.3d 713, 714 (7th Cir. 2006) ("It is enough to name the plaintiff and the defendant, state the nature of the grievance, and give a few tidbits (such as the date) that will let the defendant investigate. A full narrative is

unnecessary."). The Supreme Court also has instructed that, in civil rights cases alleging municipal liability, a federal court may not apply a heightened pleading standard more stringent than the usual pleading requirements of Rule 8(a). See *Leatherman v. Tarrant County*, 507 U.S. 163, 165 (1993).

Together, these rules ensure that claims are determined on their merits rather than on pleading technicalities. See *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002) ("The liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."). For this reason, we do not require "an exhaustive recitation of the facts or elements" of a plaintiff's claim. *Lekas v. Briley*, 405 F.3d 602, 606 (7th Cir. 2005). Indeed, "[a]ll the complaint need do to withstand a motion to dismiss for failure to state a claim is outline or adumbrate a violation of the statute or constitutional provision upon which the plaintiff relies and connect the violation to the named defendants." *Brownlee v. Conine*, 957 F.2d 353, 354 (7th Cir. 1992) (internal citations and quotation marks omitted). Rule 8(a)'s notice pleading standard applies to pendant state law claims that are pleaded in federal court. See, e.g., *McDonald v. Household International, Inc.*, 425 F.3d 424, 427 (7th Cir. 2005).

## A.  Constitutional Violations

Within this liberal framework of notice pleading, the plaintiffs seek to state a claim against Deputy Krieger and Boone County under 42 U.S.C. §1983. In order to state a claim under §1983, the plaintiffs must allege that a government official, acting under color of state law, deprived them of a right secured by the Constitution or laws of the United States. *Brokaw v. Mercer County*, 235

F.3d 1000, 1009 (7th Cir. 2000); see also *Gomez v. Toledo*, 446 U.S. 635, 640 (1980). Here, the plaintiffs allege that Deputy Krieger and Boone County violated the couple's Fourth Amendment right to be free from unreasonable searches and seizures. The complaint also alleges that the defendants deprived them of their right to associate intimately without interference from the state, a right they describe as a liberty interest protected by the Fourteenth Amendment's Due Process Clause. Deputy Krieger and Boone County do not dispute that their alleged actions were taken "under color of state law," *Brokaw*, 235 F.3d at 1009. Instead, the parties' disagreement surrounds whether the plaintiffs have alleged the violation of a federal right. We shall address each constitutional claim in turn.

### 1. Fourth Amendment

The plaintiffs' first constitutional claim is covered by a specific constitutional provision, the Fourth Amendment. When the violation of a specific right is alleged, such a claim "must be analyzed under the standard appropriate to that specific [constitutional] provision." *County of Sacramento v. Lewis*, 523 U.S. 833, 843 (1998). The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." Only government activity that constitutes either a "search" or a "seizure" is regulated by the Fourth Amendment.

A search takes place when the state intrudes upon an individual's legitimate interest in privacy. See *Katz v. United States*, 389 U.S. 347 (1967); see also *California v. Greenwood*, 486 U.S. 35, 39 (1988). This expectation must be one that society is willing to accept. See *Katz*, 389 U.S. at 353. Furthermore, a plaintiff invoking the

Fourth Amendment must show that he has attempted to keep the object of the search private. *Id.* at 351 ("[T]he Fourth Amendment protects people, not places. What a person knowingly exposes to the public, even in his own home or office, is not a subject of Fourth Amendment protection."); *United States v. Dunkel*, 900 F.2d 105, 107 (7th Cir. 1990).

In the present case, the plaintiffs allege that Deputy Krieger followed them in his squad car as they drove on Boone County roads and sat outside businesses that the couple patronized. This alleged behavior did not constitute a Fourth Amendment search. Driving on public streets is one of the activities during which a person does not enjoy a legitimate interest in privacy. *United States v. Knotts*, 460 U.S. 276, 281 (1983) ("A person traveling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another."). Nor can individuals reasonably expect privacy in the parking lot of a business. See *Dunkel*, 900 F.2d at 107. In observing the couple's public movements, Deputy Krieger did not conduct a search in violation of the Fourth Amendment.

Nor were the plaintiffs ever "seized" within the meaning of the Fourth Amendment. We recognize that, in certain circumstances, a Fourth Amendment "seizure" may occur when police intentionally restrict the freedom of a person to move about in public. See *Brower v. County of Inyo*, 489 U.S. 593, 596 (1989). For example, if law enforcement officers attempt to stop a fleeing suspect by forcing his automobile off the road, they have conducted a seizure for purposes of the Fourth Amendment. *Id.* at 597. This type of seizure occurs, however, only if two conditions are met. First, the officer must, through physical force or a show of authority, "communicate[ ] to a reasonable person that he [is] not at liberty to ignore the police presence and

go about his business." *Florida v. Bostick*, 501 U.S. 429, 437 (1991) (internal quotation marks omitted); see also *United States v. Packer*, 15 F.3d 654, 657 (7th Cir. 1994). Second, when the officer's encounter with the plaintiff is nonphysical, the plaintiff must have submitted to the show of authority to establish that a seizure has taken place. See *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("An arrest requires either physical force (as described above) or, where that is absent, submission to the assertion of authority." (emphasis omitted)).

In light of these requirements, the theory that the plaintiffs were "seized" when Deputy Krieger followed them in his squad car is inconsistent with the allegations of the complaint. The alleged actions by Deputy Krieger were nonphysical. Therefore, to be a seizure, the Deputy must have communicated reasonably to the plaintiffs that they were not free to move. We cannot hypothesize from the allegations contained in the complaint a scenario in which Deputy Krieger's actions—the following, the stalking in the parking lot—would lead reasonable persons to feel that they had to stay where they were for fear of force or arrest. See *Driebel v. Milwaukee,* 298 F.3d 622, 642 (7th Cir. 2002) (determining that a police station employee was not seized when he was ordered to work overtime and "stand by" for three and one-half hours in the police garage, because there was "no evidence suggesting that he would have been prevented from leaving the garage had he refused to obey"). Indeed, the complaint asserts that Deputy Krieger followed the plaintiffs *repeatedly*, meaning that they continued to go about their daily business in spite of being followed and watched. These allegations cannot describe a Fourth Amendment "seizure" because they tell us that the plaintiffs, in fact, did not submit to whatever restriction on their freedom Deputy Krieger attempted to impose. *Id.* ("A seizure occurs

only when a person submits to the show of lawful authority . . . .").[1]

Nor do the plaintiffs' other allegations state a claim under the Fourth Amendment. Ms. Christensen complained of being watched by Deputy Krieger as she went about her duties as an employee of a local gas station. At these moments, however, she did not enjoy a legitimate expectation of privacy. In her job at the gas station, she appeared in plain view of the public, and Deputy Krieger had no particular vantage point unavailable to the public generally. See *United States v. Gonzalez*, 348 F.3d 543, 547 (9th Cir. 2003) (holding that a hospital employee caught on video in the mailroom of the hospital enjoyed no legitimate expectation of privacy). Thus, where Ms. Christensen's job exposed her movements to the public generally, the Fourth Amendment is no bar to her being watched by police officers. See *United States v. Sandoval-Vasquez*, 435 F.3d 739, 743 (7th Cir. 2006) (holding that no search occurred when police officers entered an open business); *United States v. Tolar*, 268 F.3d 530, 532 (7th Cir. 2001) (noting that a chain link fence surrounding a business did not engender a reasonable expectation of privacy in items visible through the fence).

---

[1] As the Supreme Court has explained:

> [A] Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement (the innocent passerby), nor even whenever there is a governmentally caused and governmentally desired termination of an individual's freedom of movement (the fleeing felon), but only when there is a governmental termination of freedom of movement *through means intentionally applied*.

*Brower v. County of Inyo*, 489 U.S. 593, 596-97 (1989) (emphasis in original).

Finally, the complaint describes an incident in which Deputy Krieger searched a cell phone belonging to a friend of Officer Alty to find out if the two recently had communicated. Like the others, this incident cannot supply the basis for a Fourth Amendment claim because Officer Alty had no legitimate expectation of privacy in a cell phone belonging to someone else. *Rakas v. Illinois*, 439 U.S. 128, 134 (1978) ("A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed."); *Young v. Murphy*, 90 F.3d 1225, 1236 (7th Cir. 1996) ("The right against unreasonable searches and seizures is a personal right and generally may not be submitted on behalf of others."). The plaintiffs' Fourth Amendment claims properly were dismissed.

### 2. Intimate Association

The plaintiffs' other constitutional claim asserts the deprivation of a liberty interest in violation of the Fourteenth Amendment's Due Process Clause. More specifically, the couple asserts that Deputy Krieger's conduct, and the County's tacit approval of that conduct, unjustifiably impaired the plaintiffs' fundamental right to associate intimately with one another. To assess this assertion, we employ the basic framework for claims that arise out of the substantive component of the Fourteenth Amendment's Due Process Clause. In doing so, we keep in mind the Supreme Court's admonition that the concept of substantive due process must be expanded reluctantly "'because the guideposts for responsible decision-making in this uncharted area are scarce and open-ended.'" *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997) (quoting *Clark v. Harker Heights,* 503 U.S. 115, 125

(1992)); see also *University of Michigan v. Ewing*, 474 U.S. 214, 225-26 (1985).

Our first step is to provide a "careful description" of the interest said to have been violated. *Doe v. City of Lafayette*, 377 F.3d 757, 768 (7th Cir. 2004) (citing *Glucksberg*, 521 U.S. at 721). Then, we must determine whether that interest is "fundamental"—that is, whether it is so deeply rooted and sacrosanct that no amount of process would justify its deprivation. *Glucksberg*, 521 U.S. at 720-21 ("[T]he Due Process Clause specially protects those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition . . . ." (internal quotation marks omitted)). Once we are satisfied that a fundamental right is at stake, we then determine whether the government has interfered "directly" and "substantially" with the plaintiffs' exercise of that right. *Zablocki v. Redhail*, 434 U.S. 374, 386-87 & n.12 (1978). Finally, if a fundamental right has been impaired, we ask whether the governmental action can find "reasonable justification in the service of a legitimate governmental objective," or if instead it more properly is "characterized as arbitrary, or conscience shocking, in a constitutional sense." *Lewis*, 523 U.S. at 846-47.[2]

---

[2] When, as in the present case, a plaintiff complains of abusive executive action, this "conscience shocking" test determines liability, rather than the traditional strict scrutiny standard used to measure the constitutionality of legislative acts. See *County of Sacramento v. Lewis*, 523 U.S. 833, 846-47 (1997) (clarifying this distinction). The "shocks the conscience" standard works to distinguish the due process guarantee from traditional standards of tort liability, so that the Fourteenth Amendment does not become a "'font of tort law.'" *Id.* at 848 (quoting *Paul v. Davis*, 424 U.S. 693, 701 (1976)); see also *Khan v. Gallitano,* 180 F.3d 829, 836 (7th Cir. 1999) (denying constitutional claims because

(continued...)

In the present case, the plaintiffs invoke their constitutional right to engage in "intimate association." In more concrete terms, the plaintiffs claim that they should have been free from Deputy Krieger's interference with their choice to enter into a non-marital romantic relationship. The Supreme Court frequently has recognized the constitutional stature of the freedom to enter into and carry on certain intimate associations. In *Roberts v. United States Jaycees*, 468 U.S. 609 (1983), the Court delivered a comprehensive discussion of this right. At the outset, the Court observed that, in prior cases, it had described the freedom to associate in "two distinct senses." *Id.* at 617. In the first line of cases, *Roberts* explained, "the Court has recognized a right to associate for the purpose of engaging in those activities protected by the First Amendment— speech, assembly, petition for the redress of grievances, and the exercise of religion." *Id.* at 618. In the second set of decisions, "the Court has concluded that choices to enter into and maintain certain intimate human relationships must be secured against undue intrusion by the State because of the role of such relationships in safeguarding the individual freedom that is central to our constitutional scheme." *Id.* at 617-18. In this second category of decisions, "freedom of association receives protection as a fundamental element of personal liberty" under the Due Process Clause. *Id.* at 618; see also *Montgomery v. Stefaniak*, 410 F.3d 933, 937 (7th Cir. 2005).

---

(...continued)
"[t]he defendants' tortious acts, which subject them to possible liability under state law, are not so extreme as to shock the conscience"). Whether something less than intentional conduct "shocks the conscience" varies depending on the context of the alleged violation. *Id.* at 850 (discussing how a prison official's "deliberate indifference" may shock the conscience when he denies a prisoner medical treatment, but not when he uses force upon a prisoner to restore order).

The plaintiffs' relationship, as they assert, fits best within the second *Roberts* category and, therefore, must be analyzed under the Due Process Clause as a liberty interest, rather than as a relationship formed for first amendment purposes.[3] Intimate associations protected by the Due Process Clause, *Roberts* said, "have played a critical role in the culture and traditions of the Nation by cultivating and transmitting shared ideals and beliefs; they thereby foster diversity and act as critical buffers between the individual and the power of the State." *Roberts*, 468 U.S. at 618. Additionally, these relationships bestow "the ability independently to define one's identity that is central to any concept of liberty." *Id.* at 619.

In *Lawrence v. Texas*, 539 U.S. 558 (2003), the Court held that private homosexual relationships are a form of intimate conduct protected as a liberty interest against unreasonable public interference. This is so, the Court held, whether or not the participants are married. It is impossible to see how an unmarried heterosexual couple in a long-term relationship could receive less protection. We therefore conclude, on the authority of *Lawrence*, that the plaintiffs' relationship is a form of "intimate association" protected by the Constitution. So we had assumed in *Montgomery*, 410 F.3d at 938.[4]

---

[3] Indeed, the allegations of the plaintiffs' complaint make clear that the relationship between Ms. Christensen and Officer Alty is not one entered into for the purpose of "speech, assembly, petition for the redress of grievances, [or] the exercise of religion." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1983).

[4] See also, e.g., *Anderson v. City of Lavergne*, 371 F.3d 879, 882 (6th Cir. 2004) (a couple is engaged in a constitutionally-protected intimate association when they were living together, were romantically and sexually involved, and were monogamous);

(continued...)

We next must consider whether Deputy Krieger interfered "directly" and "substantially" with the plaintiffs' right to associate intimately. *Zablocki*, 434 U.S. at 387. The Constitution prevents fundamental rights from being aimed at; it does not, however, prevent side effects that may occur if the government is aiming at some other objective. That much is clear from *Califano v. Jobst*, 434 U.S. 47 (1977). A federal disability-benefits program cut off support when beneficiaries married. The Court held that this does not violate the Constitution, even though it could be seen as a penalty on marriage (especially so when both spouses are disabled), because it reflects a view that one spouse usually supports the other. The program's incidental effect on marriage when both spouses are disabled, the Court held, differs from the sort of penalty that occurs when a law is designed to penalize the fundamental interest. Cf. *Personnel Administrator of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979) (a government intends to achieve a particular result only when the law has been adopted because of, rather than in spite of or with indifference to, that result).

This is why being fired from a public job (after any hearing that may be required) does not create constitutional difficulties if it turns out that the ex-employee becomes moody and makes the family miserable; likewise the spouse of someone run over by a garbage truck may have a loss-of-consortium claim under state law but

(...continued)

*Wilson v. Taylor*, 733 F.2d 1539, 1544 (11th Cir. 1984). But cf. *Michael H. v. Gerald D.*, 491 U.S. 110 (1989) (father of a child born from an adulterous relationship is not constitutionally entitled to parental rights when the mother is still in a lawful marriage and that couple chooses to raise the child as its own); *Marcum v. McWhorter*, 308 F.3d 635, 640-41 (6th Cir. 2002) (an adulterous relationship is not an intimate association).

cannot invoke principles of substantive due process. Defamation by a public official, not itself a violation of the Constitution, see *Paul v. Davis*, 424 U.S. 693 (1976), does not turn into a constitutional tort if the defamed party becomes impotent or loses the respect of his children. In these situations, and many others, the effect on intimate association is incidental to the defendant's activities.

The district court dismissed the plaintiffs' intimate-association claim because, in its view, "[t]he alleged conduct of [Deputy] Krieger simply does not rise to the level of preventing plaintiffs from having a meaningful relationship." To the extent that the district court demanded a more complete factual narrative in the complaint, it required more than is appropriate under Fed. R. Civ. P. 8(a). The plaintiffs' complaint alleges that Deputy Krieger acted "with the intent to cause Plaintiffs harm in their employment, as well as in their relationships with various businesses in Boone County, and finally, *with each other*" (emphasis added). It then went on to allege that Deputy Krieger's actions, in fact, "interfered with the Plaintiffs' rights to privacy [and] their right to freedom of association." These allegations suffice to put the defendants on notice of the plaintiffs' grievance.

We need not decide whether the complaint's allegations about Deputy Krieger's motive or objective are sufficient substantively, because the adverse consequences of his actions are not sufficiently serious. Official conduct that represents an abuse of office (as opposed to, say, the implementation of a statutory duty) violates the substantive component of the due process clause only if it " 'shocks the conscience.' " *Russ v. Watts*, 414 F.3d 783, 789 (7th Cir. 2005) (quoting *Lewis*, 523 U.S. at 846-47). In *Lewis* the Court held that a death from a high-speed pursuit does not shock the judicial conscience even on the assumption that the pursuit was unnecessary and an arrest could have been effected in some other way. The

Court stated that "only the most egregious" conduct may be condemned under its approach. 523 U.S. at 846.

Watching people from a squad car is very far indeed from "the most egregious" conduct in which a deputy sheriff can engage. Deputy Krieger did not invade their bedroom or commit mayhem. Plaintiffs recognized who was trailing them. Thus even if Deputy Krieger's presence was ominous, plaintiffs had the security of knowing where to turn for redress if Deputy Krieger should decide to take more aggressive steps. They could have sought a restraining order from state court—yet we know from *Castle Rock v. Gonzales*, 545 U.S. 748 (2005), that, even had such an order been issued and ignored, state rather than federal courts would be the right forum for enforcement.

*Lewis* calls for judicial modesty in implementing a federal program of constitutional torts that lie outside any specific clause of the Constitution. A modest role means leaving to ordinary tort litigation conduct of the sort in which Deputy Krieger is alleged to have engaged.

Plaintiffs say that Deputy Krieger's conduct is constitutionally obnoxious because it is harmful yet unjustified by any legitimate governmental interest. That's just another way to say that the conduct is tortious, but *Lewis* holds that substantive due process does not replicate state tort law. 523 U.S. at 848-49. The language of "legitimate governmental interests" summons up the rational-basis inquiry under the equal protection clause, yet plaintiffs have not advanced a class-of-one (or class-of-two) claim under the equal protection clause. See *Village of Willowbrook v. Olech*, 528 U.S. 562 (2000); *Lauth v. McCollum*, 424 F.3d 631 (7th Cir. 2005). Equal-protection analysis must be kept distinct from substantive claims under the Due Process Clause.

Asking whether the defendant had a "legitimate governmental interest" not only would depart from the "most egregious conduct" inquiry under *Lewis* but also would go far toward constitutionalizing state law, which *Lewis* said must not happen. As the complaint describes events, Deputy Krieger was acting outside the scope of his duties, disreputably and shamefully. But it is established that a violation of state law does not automatically violate the federal Constitution too. See *Archie v. Racine*, 847 F.2d 1211 (7th Cir. 1988) (en banc) (collecting cases). It is essential to recognize a category (a large category) of acts that offend state law without offending the Constitution too. This is another point that *Lewis* made. See 523 U.S. at 848-49 (conscience-shocking conduct is a very small portion of the misbehavior actionable under tort law).

In sum, the complaint includes enough descriptive matter to show that the claim is not sound under federal law.

### 3. Municipal Liability

Because we have determined that all of plaintiffs' claims under federal law were properly dismissed, there can be no §1983 liability for Boone County either.

### B. The State-Law Tort Claim

Finally, we must decide whether the district court properly dismissed the plaintiffs' state-law tort claim. Illinois law recognizes the tort of intentional infliction of emotional distress, which was pleaded by the plaintiffs in Count III of their complaint. See *McGrath v. Fahey,* 533 N.E.2d 806, 809 (Ill. 1988). Among other requirements, a plaintiff's emotional distress must be "severe," and the defendant's conduct "extreme and outrageous," to give rise

to liability for this tort. See *Public Fin. Corp. v. Davis*, 360 N.E.2d 765, 767-68 (Ill. 1976).

In the district court's view, the plaintiffs' tort claim failed because the complaint did not allege that Deputy Krieger's conduct was "extreme and outrageous," and because the complaint did not allege a severe emotional injury. In making this determination, the district court appears to have applied Illinois' fact-pleading requirements for civil complaints. Yet this suit is in federal rather than state court, and each sovereign may apply its own procedural rules in its own courts. Rule 8 does not require plaintiffs to plead the "elements" of legal theories, or facts corresponding to each element. See *Swierkiewicz*, 534 U.S. at 510-11; *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1077-78 (7th Cir. 1992).

When state and federal practice differ, federal rules adopted under the Rules Enabling Act prevail. See, e.g., *Hanna v. Plumer*, 380 U.S. 460 (1965); *Walker v. Armco Steel Corp.*, 446 U.S. 740 (1980). This means, in particular, that when federal courts entertain claims under state law—whether under the diversity jurisdiction of 28 U.S.C. §1332 or, as here, the supplemental jurisdiction of 28 U.S.C. §1367—it is not necessary to plead facts matching elements of legal theories. See *Hefferman v. Bass*, 467 F.3d 596, 599 (7th Cir. 2006); *AXA Corporate Solutions v. Underwriters Reinsurance Corp.,* 347 F.3d 272, 277 (7th Cir. 2003) ("Parties might prefer the notice-pleading regime of the Federal Rules of Civil Procedure over the fact-pleading approach that prevails in Illinois courts, but no one thinks that the Illinois rules of pleading are binding on the federal courts.").

Although the district court was correct in observing that the complaint did not contain all of the facts that would be necessary to prevail, "a filing under Rule 8 is not supposed to do that." *Hoskins v. Poelstra*, 320 F.3d 761,

764 (7th Cir. 2003). Instead, the complaint "should be 'short and plain' and suffices if it notifies the defendant of the principal events." *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). Here, the plaintiffs' factual allegations described the principal events giving rise to the suit and attached them to a right of action cognizable under state law. The plaintiffs' state-law tort claim must be reinstated. Because the federal claims have been resolved, the district court should relinquish supplemental jurisdiction so that the state-law claims may be resolved in state court. 28 U.S.C. §1367(c)(3).

## III.  CONCLUSION

For the foregoing reasons, we affirm the district court's judgment to the extent that it dismissed the plaintiffs' federal claims, but we vacate the decision to dismiss the balance of the action with prejudice. The case is remanded for further proceedings consistent with this opinion.

RIPPLE, *Circuit Judge*, concurring in part and dissenting in part.  I join the opinion of the court except in its treatment of the plaintiffs' claim that Deputy Krieger's conduct deprived them of their right to intimate association. In my view, the district court erroneously dismissed this claim at this early stage of the proceedings. Accordingly, I respectfully dissent from this portion of the court's disposition and, in the following sections, shall explain why I believe that the panel majority opinion is both factually and legally in error.

**A.**

At the outset, it is important to note the procedural posture of the case as it comes to us. The district court dismissed this claim for failure to state a claim upon which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). Like the district court, we therefore must take all the well-pleaded allegations of the complaint as true. *See Hintosh v. Herman M. Finch Univ. of Health Sci./The Chicago Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Indeed, we must construe those allegations in a light most favorable to the plaintiffs. *See Lee v. City of Chicago*, 330 F.3d 456, 459 (7th Cir. 2003). In a civil rights action such as this one, we cannot require that the plaintiffs set forth their claim with any more specificity than required for any other claim. Although our circuit at one time made such a demand upon litigants, *see Sivard v. Pulaski County*, 959 F.2d 662, 667 (7th Cir. 1992) ("This Court demands that plaintiffs suing a municipal body under § 1983 plead with greater specificity than might ordinarily be required."), the Supreme Court has made it clear that there is no legal justification for such a requirement, *see Leatherman v. Tarrant County*, 507 U.S. 163, 168 (1993).

In its analysis of the claim,[1] the panel majority simply characterizes the Deputy's actions as "[w]atching people from a squad car." Slip op. at 16. The complaint, on the other hand, provides a more disturbing account of the Deputy's alleged actions; it paints a picture of a far more pervasive intrusion into the lives and the relationship of the plaintiffs. Specifically, the complaint alleges in paragraph 12 that Deputy Krieger engaged "in a pattern of on-duty conduct designed to harass, annoy, and intimidate"

---

[1] Notably, the panel majority gives a more accurate summary of the complaint in its prefatory description of the case. *See* slip. op. at 3.

the plaintiffs by engaging in, among other things, the following actions:

A. Repeatedly following the Plaintiffs while they are driving lawfully to and from their destinations, both individually as well as together, and while they are engaged in lawful conduct;

B. Repeatedly parking his squad car at or near Plaintiff CHRISTENSON's [sic] place of employment and conducting surveillance of her lawful activities, as well as monitoring her lawful conduct while employed as a Clerk at Kelly Williamson Mobil Co.;

C. Abandoning service calls and traffic stops to follow the Plaintiffs upon recognizing that they are in the vicinity of where he is located;

D. Parking his squad car outside of businesses where Plaintiffs' vehicles are parked when they are patronizing said businesses, in an effort to cause them difficulties with the proprietors of such establishments.

R.3 at 4. Most importantly, the complaint alleges specifically that the Deputy carried out this "pervasive plan of intimidation" with the *specific intent* to harm the plaintiffs in their relationship "with each other." *Id.* The allegations set forth above do not simply describe an individual sitting in a police car watching individuals from afar. Rather, the allegations describe a police officer not only stalking a couple as they go about performing the daily tasks of living in a community, but also stalking in a manner designed to intrude upon and to injure their relationship.

**B.**

My colleagues are quite right to emphasize that claims based on the concept of substantive due process must be approached with great care and circumspection. As our own case law reflects, the Supreme Court has made clear that the scope of substantive due process is very limited. *See, e.g.*, *Tun v. Whitticker*, 398 F.3d 899, 902 (7th Cir. 2005) (citing *Washington v. Glucksberg*, 521 U.S. 702 (1997)). This reluctance is grounded, in part, in the realization that "guideposts for responsible decisionmaking in this unchartered area are scarce and open-ended." *Collins v. City of Harker Heights*, 503 U.S. 115, 125 (1992). It also finds roots in our reluctance to fix the boundaries of due process in a way that intrudes into the state's proper domain of fashioning principles of private tort law. The Due Process Clause is intended as a "limitation of the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago County Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989).

Nevertheless, the concept of substantive due process remains an important part of our constitutional jurisprudence and, in its limited domain, plays an important role in the protection of individual liberty. As we noted in *Tun*, the essence of substantive due process is *protection of the individual from the exercise of governmental power* without reasonable justification. *See Tun*, 398 F.3d at 902. In the context of the action of law enforcement authorities, the situation that we face in this case, "[i]t is most often described as an abuse of government power which 'shocks the conscience.'" *Id.* (quoting *Rochin v. California*, 342 U.S. 165, 172 (1952)).

Despite the dangers inherent in the implementation of a constitutional standard that lacks built-in guidelines, the task is hardly beyond careful judicial implementa-

tion. First of all, we must remember that, while the "shocks the conscience" standard seems at first glance to be highly subjective, the Supreme Court has made it quite clear that it is objective in nature. In determining what kind of conduct can be said to shock the judicial conscience, judges invariably start by "asking whether or not the objective character of certain conduct is consistent with our traditions, precedents, and historical understanding of the Constitution and its meaning." *County of Sacramento v. Lewis*, 523 U.S. 833, 857 (1998) (Kennedy, J., concurring); *see also id.* at 847-48 n.8. The court must ask whether the conduct in question "can be said to have found historical acceptance, or at least tolerance, among traditional executive practices." *Galdikas v. Fagan*, 342 F.3d 684, 690 n.3 (7th Cir. 2003), *abrogated on other grounds by Spiegla v. Hull*, 371 F.3d 928, 941-42 (7th Cir. 2004). The determination, of course, also must include an "objective assessment" of the necessities of contemporary law enforcement, an area in which "the police must be given substantial latitude and discretion." *County of Sacramento*, 523 U.S. at 857 (Kennedy, J., concurring). Although negligent action never can be sufficient to meet the "shocks the conscience" standard, "actions intended to injure in some way unjustifiable by any governmental interest" are those most likely to rise to the conscience-shocking level. *Id.* at 849. In assessing the particular governmental conduct at issue, a court cannot view that conduct *in abstracto*. It is important that all the facts and circumstances of the situation be considered. *See Miller v. City of Philadelphia*, 174 F.3d 368, 375 (3d Cir. 1999).

Usually, a court is faced with the task of assessing conduct that took place in the course of undertaking official duties. In such a context, it is often important to differentiate between situations in which the state actor is acting under exigent circumstances and those situations

in which the state actor is working at a more deliberate pace. "Where a defendant is 'confronted with a hyper-pressurized environment such as a high-speed chase . . . it is usually necessary to show that the officer deliberately harmed the victim.' Where a defendant has 'the luxury of proceeding in a deliberate fashion . . . deliberate indifference may be sufficient to shock the conscience.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 426 (3d Cir. 2006) (quoting *Estate of Smith v. Marasco*, 430 F.3d 140, 153 (3d Cir. 2005)); *see also, e.g.*, *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (holding that deliberate indifference of jailors to prisoner's repeated complaints, over many days, that he was being held without a hearing shocked the conscience).

Although courts usually are asked to assess the actions of a government official who is performing official duties, a court sometimes is faced with a situation in which an officer has not simply acted unreasonably in the execution of his duties but has used his office not in connection with any official duty but for his own purposes. Such an abuse of governmental power, when directed against the exercise of a fundamental liberty interest, is an arbitrary abuse of power that shocks the conscience. *See Hawkins v. Holloway*, 316 F.3d 777, 787 (8th Cir. 2003). Such conduct, "intended to injure in some way unjustifiable by any government interest," is the sort of conduct "most likely to rise to the conscience-shocking level." *County of Sacramento*, 523 U.S. at 849; *see also Remer v. Burlington Area Sch. Dist.*, 286 F.3d 1007, 1013 (7th Cir. 2002); *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1075 (11th Cir. 2000).

The case before us clearly falls within this last category. According to the allegations of the complaint, Deputy Krieger embarked upon a scheme of retaliation against the plaintiffs in which he used the power and authority of

his office to injure their relationship. This systematic
vendetta had no conceivable legitimate governmental
purpose. It amounted to the raw use of the power—power
that comes with a badge, a service revolver, and the power
to arrest—in order to make it difficult for this couple to
maintain a romantic relationship that our constitution
protects as a fundamental right.[2] The panel majority
fails to recognize that, under the prevailing case law,
such a perverse use of police authority surely shocks the
judicial conscience just as it shocks our national con-
science.

Today's decision also will have a very practical and
harmful effect on municipal governance throughout this
circuit. The panel majority's failure to recognize the
situation here as a willful abuse of governmental power

---

[2] My colleagues liken the present situation to the one present
in *County of Sacramento v. Lewis*, 523 U.S. 833 (1988). In doing
so, they fail to recognize a fundamental difference that was
very apparent to the Supreme Court. *County of Sacramento*
involved the dangerous chase of a suspect who had ignored the
lawful command of police authorities to stop. The actions of the
police officers in that case, while professionally substandard and
worthy of severe criticism, were *not* intentional and were
committed in the course of official activity undertaken in exigent
circumstances. Nor did the officers' actions find opprobrium in
the historic traditions of this country: "Neither our legal tradi-
tions nor the present needs of law enforcement justify finding
a due process violation when unintended injuries occur after the
police pursue a suspect who disobeys their lawful order to stop."
*Id.* at 858 (Kennedy, J. concurring). Although substantive due
process analysis must steer a wide berth around traditional
principles of tort law, *see id.* at 848, "conduct intended to injure
in some way unjustifiable by any government interest is the
sort of official action most likely to rise to the conscience-shock-
ing level," *id.* at 849; *see also Daniels v. Williams*, 474 U.S. 327,
331 (1986).

and its failure to characterize the conduct as conscience shocking will have a direct and immediate effect on efforts to maintain discipline and professionalism in the countless number of small municipal police forces that dot our landscape. This is no easy task for those who have the responsibility of county and municipal leadership today. The ravages of undue political influence and the lack of financial resources for both recruitment and training make the burden of those in leadership positions a heavy one indeed. Today, the highest federal court in this region of the United States sends a surely unintended, but nevertheless unwelcome, message that minimizes the significance of a raw use of municipal police power. The task of the dedicated officers who command those departments just became more difficult.

I respectfully dissent.

A true Copy:

     Teste:

 

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*